## NOTICE:  SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JAN 0 8 2015

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on Jan. 8, 2015

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 88854-0 |
| Petitioner, | |
| v. | EN BANC |
| JOEL CAMERON CONDON, | |
| Respondent. | Filed __JAN 0 8 2015__ |

GORDON McCLOUD, J.—The defendant, Joel Condon, was charged with multiple offenses, including aggravated first degree (premeditated) murder and first degree felony murder, stemming from his involvement in a home invasion robbery attempt. A jury found Condon guilty of aggravated (premeditated) first degree murder, first degree burglary, and second degree unlawful possession of a firearm.[1]

---

[1] In accordance with its instructions, after finding Condon guilty of aggravated murder, the jury did not address the question of whether Condon was guilty of first degree felony murder.

*State v. Condon (Joel)*, No. 88854-0

The primary questions before the court are whether there was sufficient evidence of premeditation and whether Condon was entitled to a jury instruction on second degree intentional murder as a lesser included offense to aggravated premeditated murder.

The Court of Appeals found there was sufficient evidence of premeditation, but that it was error to deny Condon's request for an instruction on the lesser included crime. *State v. Condon*, noted at 174 Wn. App. 1041, 2013 WL 1628247. We affirm the Court of Appeals.

FACTS

On January 20, 2009 two men kicked down the door and entered the home where Carmelo Ramirez and Enedina Gregorio lived with their three children. The intruders apparently believed (mistakenly) that they were at the home of a drug dealer who they planned to rob.

As the intruders entered and began shouting at the family, Ramirez and Gregorio's son went to a bedroom where his two younger siblings were playing. Gregorio followed and told her children to escape through the bedroom window. She then returned to the living room, where Ramirez was trying to take a gun from the taller of the two intruders. The other intruder grabbed Gregorio, threw her facedown on a sofa, and held her hands behind her back.

At that moment a family friend, Martin Gutirrez, pulled into the driveway and, according to Gregorio, frightened the intruders. Gregorio heard gun shots, and the two intruders fled, leaving a cell phone behind. Ramirez staggered out of the house and told Gutirrez that he had been shot. Gutirrez rushed him to a nearby Farm Workers Clinic for immediate help. The nurses were unable to save him there, and he died before reaching the hospital.

Approximately six weeks later, Jesus Lozano turned himself in and gave a statement to the police describing the break-in and shooting. Lozano was the owner of the cell phone left at the crime scene. He identified the other intruder as a man called "Wak-Wak," a tall, light skinned Native American with a tattoo on his neck of a scroll with writing on it. State Ex. 1 (Recorded Statement of Jesus Lozano, Mar. 10, 2009); 4 Tr. of Proceedings (TP) (Jury Trial) (Jan. 27, 2011) at 788-90. He told police that Ramirez had gotten him in a choke hold during the struggle and that Wak-Wak had shot Ramirez just as Lozano was losing consciousness from lack of oxygen.

From Lozano's description, police identified Joel Condon as the man called Wak-Wak. State Ex. 1; 4 TP (Jury Trial) (Jan. 27, 2011) at 788-90. The State charged Condon with one count of aggravated first degree (premeditated) murder, in violation of RCW 9A.32.030(1)(a) and RCW 10.95.020(11)(a); one count of first degree felony murder predicated on first degree burglary and attempted first degree robbery, in violation of RCW 9A.32.030(1)(c); one count of first degree burglary, in

violation of RCW 9A.52.020(1)(b); and one count of second degree unlawful possession of a firearm, in violation of RCW 9.41.040(2)(a)(i). Clerk's Papers (CP) at 302-03. Some of the counts included firearm enhancements. With respect to the first degree (premeditated) murder charge, the aggravating circumstance alleged was that the murder took place "in the course of, in furtherance of, or in immediate flight from" a first degree burglary and/or an attempted first degree robbery. CP at 302.

At trial, the State presented Lozano's testimony that Condon had been the shooter in the burglary, testimony by a jailhouse informant that Condon had admitted to shooting a victim when he "screwed up on a home invasion," 5 TP (Jan. 31, 2011) at 1001, and Gregorio's pretrial lineup and in-court identification of Condon. Condon argued mistaken identity, pointing out the lack of forensic evidence, impugning the credibility of the State's witnesses, and criticizing the procedures used to facilitate Gregorio's identification.[2]

Before closing arguments, defense counsel requested that the jury be instructed on second degree intentional murder as a lesser included offense to

---

[2] *See, e.g.,* 6 TP (Feb. 1, 2011) at 1139 ("The allegation of the State is that two people are in this house burst in by force, wrestled around, touching God knows what in that house and we saw photographs and a video. Is there a fingerprint anywhere that the authorities are able to pick up anywhere on anything? No."), 1148 ("It's up to you to evaluate the credibility of this person, who he is -- trapped in the system and trying to scratch out whatever it is that he can scratch out and he's not doing too badly. . . . He would be willing to say anything."), 1147 ("Ms. Gregorio told officers within an hour after this happened that these two people were either Hispanic or native and one was taller or shorter; one was taller, one was shorter. That's all she said. Everything else came later.").

4

aggravated (premeditated) first degree murder. Counsel reasoned that the jury could find that he committed the murder but without premeditation. The court denied the request for two reasons: first, that the evidence presented did not support an inference that the shooting was not premeditated, and second, that second degree murder was a lesser included offense to the first degree (premeditated) murder charge, but not to the first degree felony murder charge.

The jury convicted Condon of aggravated first degree murder, first degree burglary, and second degree unlawful possession of a firearm. The trial court imposed the mandatory minimum penalty for aggravated first degree murder: life without the possibility of parole.

Condon appealed, and the Court of Appeals reversed. *Condon*, 2013 WL 1628247. It concluded that Condon was entitled to a lesser included instruction on second degree (nonpremeditated) murder. It then conducted a harmless error analysis and considered the probability that the jury might have found the murder "intentional but impulsive rather than premeditated." *Id.* at *8. It concluded that because the trial court failed to instruct the jury on second degree intentional murder, "[t]he instructions given . . . did not draw the jury's attention to the difference between premeditation and intent." *Id.* at *7.

The State petitioned this court for review, arguing that the trial court properly refused to give the lesser included offense instruction. In his answer to the State's

petition, Condon raised several other issues. We granted review as to two issues in all: (1) the sufficiency of the evidence to support the jury's finding of premeditation, and (2) Condon's entitlement to the lesser included offense instruction. *State v. Condon*, 178 Wn.2d 1010, 311 P.3d 26 (2013).

## ANALYSIS

I.     The Evidence Was Sufficient To Support the Jury's Finding of Premeditation

In considering a sufficiency of the evidence challenge, we must determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Luvene*, 127 Wn.2d 690, 712, 903 P.2d 960 (1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1970), quoted in *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). "A claim of insufficiency [of evidence] admits the truth of the State's evidence and all inferences that reasonably can be drawn [from it]." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

To convict Condon of first degree premeditated murder, the State had to prove that Condon caused the death of Ramirez with premeditated intent. RCW 9A.32.030(1)(a). Condon argues there was insufficient evidence of premeditation because the facts all suggest that Condon was reacting to a struggle, not that he had planned the killing ahead of time. We disagree.

6

"Premeditation" is "'the deliberate formation of and reflection upon the intent to take a human life'" and involves "'the mental process of . . . deliberation, reflection, weighing or reasoning for a period of time, however short.'" *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995) (quoting *State v. Gentry*, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1995)). Premeditation must involve "more than a moment in point of time." RCW 9A.32.020(1).

The State presented evidence that Condon entered the Toppenish home wielding a loaded handgun and intending to commit a robbery. That motive is relevant to establishing premeditation. *See Pirtle*, 127 Wn.2d at 644. Specifically, we have found that "'[a] person can form a premeditated design to effect the death of another for the purpose of better enabling him to rob the person or premises of that other.'" *State v. Miller*, 164 Wash. 441, 447, 2 P.2d 738 (1931) ("When the appellant entered the express office [intending to rob it] and saw two men present, he may have very hastily concluded that it was advisable to dispose of Ivester so he would have but one man to contend with.") (quoting *State v. Evans*, 145 Wash. 4, 11, 258 P. 845 (1927)); *Luvene*, 127 Wn.2d at 713 (evidence showed the defendant entered liquor store to rob it and shot clerks; this sufficed to prove premeditation). Given that Condon entered the house with a loaded handgun, intending to rob a drug dealer, a rational jury could have found premeditation under our analysis in *Miller* and *Luvene*.

II.    The Trial Court Erred by Denying Condon's Request for an Instruction on Second Degree Murder

The standard of review applicable to jury instructions depends on the trial court decision under review. *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). If the decision was based on a factual determination, it is reviewed for abuse of discretion. *Id.* at 772. If it was based on a legal conclusion, it is reviewed de novo. *Id.*

In this case, the trial court's decision regarding the lesser included offense instruction had both factual and legal components. The trial court concluded as a matter of *law* that Condon was not entitled to the instruction on second degree intentional murder unless that crime was a lesser included offense of *both* alternative charges (aggravated (premeditated) first degree murder *and* first degree felony murder). That decision is reviewed de novo. *Id.* The trial court concluded as a matter of *fact* that the evidence did not support an inference that Condon committed the shooting without premeditation. That decision is reviewed for abuse of discretion. *Id.* at 771-72.

A. *A party is entitled to a lesser included offense instruction whenever that instruction satisfies the two-prong* Workman *test*

The right to a lesser included offense instruction is statutory, codified at RCW 10.61.006. *State v. Berlin*, 133 Wn.2d 541, 545, 947 P.2d 700 (1997). In *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), this court set forth a two-

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

prong test to determine whether a party is entitled to an instruction on a lesser included offense under RCW 10.61.006. Under the first prong of the test (the legal prong), the court asks whether the lesser included offense consists solely of elements that are necessary to conviction of the greater, charged offense. *Id.* Under the second (factual) prong, the court asks whether the evidence presented in the case supports an inference that *only* the lesser offense was committed, to the exclusion of the greater, charged offense. *Id.* at 448. The requesting party is entitled to the lesser included offense instruction when the answer to both questions is yes. *Id.*

We took a short detour from this path about 20 years ago. In *State v. Lucky*, this court held that when a charged crime can be committed by alternative means, a defendant is entitled to an instruction on a lesser included offense only if it is a lesser included offense of every one of the (potentially) greater offense's statutory means. 128 Wn.2d 727, 735, 912 P.2d 483 (1996), *overruled by Berlin*, 133 Wn.2d 541. Under the short-lived *Lucky* rule, it did not matter whether the State had actually *charged* any of the statutory alternative means; those means still had to be considered, no matter how logically irrelevant they were to the facts of the case. *Id.* at 733-34; *see also Berlin*, 133 Wn.2d at 547 ("[*Lucky*] requir[ed] us to look to 'the elements of the pertinent charged offenses as they appeared in the context of the broad statutory perspective, and not in the more narrow perspective of the offenses as prosecuted.'" (quoting *Lucky*, 128 Wn.2d at 734)).

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

One year after *Lucky* was decided, this court heard two companion cases, *Berlin*, 133 Wn.2d at 547-549, and *State v. Warden*, 133 Wn.2d 559, 562-63, 947 P.2d 708 (1997). Petitioners in both cases—the State in one, the defendant in the other—asked us to overturn *Lucky* and reinstate the traditional *Workman* rule. In *Berlin*, 133 Wn.2d at 543-44, the State wanted a lesser included instruction that was prohibited under *Lucky*; in *Warden*, 133 Wn.2d at 561, the defendant wanted the instruction.

In both *Berlin* and *Warden*, the defendant had actually been *charged* with both intentional murder and felony murder. *Berlin*, 133 Wn.2d at 543 (second degree intentional murder and second degree felony murder based on assault); *Warden*, 133 Wn.2d at 561 (first degree premeditated murder and first degree felony murder based on robbery). In both cases, the *Lucky* rule precluded the requested lesser included instruction on manslaughter because manslaughter is a lesser included offense of intentional murder but not of felony murder. *Id.* In both cases, the petitioner argued that *Lucky* was incorrect and harmful, and in both cases, this court agreed. *Berlin*, 133 Wn.2d at 546-49; *Warden*, 133 Wn.2d at 562 (adopting the reasoning in *Berlin*).

The *Berlin/Warden* holding was based on statutory construction and equitable concerns. In each case, the court reasoned that the *Lucky* rule rendered RCW 10.61.006 (the lesser included offense statute) a virtual nullity since "[a] lesser included offense will seldom satisfy every statutory alternative means of committing

10

the greater offense." *Berlin*, 133 Wn.2d at 548. It noted that this outcome went against the "basic rule of statutory construction to avoid rendering meaningless any provision of a statute," and it concluded that the *Lucky* rule was "inequitable" because it so often prevented a party from arguing a legitimate theory of its case. *Id.* at 547-48 ("As these companion cases so aptly illustrate, an inequity may arise for either the prosecution or the defense.").

To prevent such inequities, the court reinstated *Workman*'s legal prong in its original form. *Id.* at 548. Significantly for this case, it also held that in order to satisfy *Workman*'s legal prong, a lesser included offense instruction need only satisfy that prong as to *one* of multiple charged offenses. *Id.* at 543-44, 550.

> B. *The instruction on the lesser included offense that Condon requested—second degree intentional murder—satisfies* Workman*'s legal prong*

The trial court ruled that Condon was not entitled to a lesser included offense instruction unless it satisfied *Workman*'s legal prong as to *both* first degree (premeditated) murder *and* first degree felony murder.[3] This was error. Under *Berlin* and *Warden*, Condon did not have to show that second degree intentional murder was a lesser included offense of both charges. *Id.* at 543-44. Second degree

---

[3] 6 TP (Feb. 1, 2011) at 1084-85 ("The other . . . question is can second degree murder be offered as a lesser included to the second alternative or the felony murder and I don't believe it is a lesser included . . . [s]o . . . as a lesser included of the second alternative I don't believe it survives the <u>Workman</u> test, particularly on the legal prong.").

(intentional) murder is a lesser included offense with respect to aggravated first degree (premeditated) murder under the legal test, because it consists solely of elements that are necessary to conviction of that greater offense.[4]  Thus, the requested second degree intentional murder instruction satisfies *Workman*'s legal prong in this case.  Both parties agree.  Suppl. Br. of Pet'r at 8 ("Second degree intentional murder meets the legal component of the Workman test because each element of that crime is a necessary element of first degree premeditated murder."); Resp't's Second Suppl. Br. at 3 ("Petitioner concedes—as it must—that the legal prong is satisfied.").

> C. *The requested lesser included offense instruction also satisfies* Workman*'s factual prong*

Because Condon's requested instruction satisfies *Workman*'s legal prong, we must determine whether it also satisfies *Workman*'s factual prong.  *Berlin*, 133 Wn.2d at 551-52.

> i. The evidence supported an inference that only second degree murder was committed, to the exclusion of the greater charged offense of aggravated first degree (premeditated) murder

---

[4] *Compare* RCW 9A.32.050 (person commits second degree murder when, with intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person), *with* RCW 9A.32.030(1)(a) (person commits first degree murder, when with a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person), *and* RCW 10.95.020 (listing aggravating circumstances).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

As noted above, the trial court concluded that second degree intentional murder failed *Workman*'s factual prong because no rational juror could conclude that the shooting lacked premeditation. But the trial court based this conclusion on testimony that Condon reflected on the shooting *after* it had occurred:

> [T]he factual prong requires that there be -- that there be facts that raise an inference that only second degree murder was committed. And I don't see that as being -- surviving the facts in this case. . . .
>
> Mr. Condon went in and I don't find that there has to be a specific amount of time for this -- premeditation to occur. The testimony seemed pretty clear, at least the unrebutted testimony is -- is that -- there was a -- a scuffle between Mr. Ramirez and Mr. Padilla-Lozano. As a result of that scuffle . . . Mr. Condon shot Mr. Ramirez twice and -- was reflective enough, cool enough, to be able to say at some point that Padilla-Lozano was lucky he didn't get shot and that ultimately he probably should have shot him too.
>
> Now, and I recognize that the latter statement is -- is offered sometime later and may reflect an overall strategy of how that could have been -- this case could have been resolved. But as the facts occurred at the time it doesn't occur to me that they lend themselves at all to an inference that only second degree murder was committed.

6 TP (Feb. 1, 2011) at 1083-84.

This reasoning is not sound. As the Court of Appeals correctly concluded, "premeditation . . . requir[es] 'more than a moment in point of time.'" *Condon*, 2013 WL 1628247, at *6 (quoting RCW 9A.32.020). To prove premeditation the State must show "'*deliberate formation of* and *reflection upon* the intent to take a human life [that] involves the mental process of *thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time*, however short.'" *Id.*

13

(emphasis and alteration in original) (internal quotation marks omitted) (quoting *State v. Gregory*, 158 Wn.2d 759, 817, 147 P.3d 1201 (2006)). There was certainly evidence from which a jury could have inferred premeditation. But there was also evidence from which it could have inferred that premeditation was lacking. Specifically, the evidence supported an inference that the shooting was a sudden reaction, based in fear rather than "weighing or reasoning." *Id.* ("A jury could conclude from the testimony of the eyewitnesses that Mr. Condon shot Mr. Ramirez in reaction to Mr. Ramirez trying to wrest the handgun from him, or that he shot Mr. Ramirez because Mr. Lozano was turning purple from Mr. Ramirez's chokehold.")

When applying *Workman*'s factual prong, a court must view the supporting evidence in the light most favorable to the party requesting the lesser included offense instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). The trial court here failed to do that. The evidence supported an inference that the shooting was impulsive and reactionary. Testimony that Condon *later* reflected on the shooting was not sufficient to defeat that inference for purposes of *Workman*'s factual prong.[5]

_____

[5] Indeed, the trial court's conclusion that reflection *after the fact* could show *pre*meditation is probably wrong as a matter of law. To the extent that this is true, that decision is reviewed de novo. *Walker*, 136 Wn.2d at 771-72. Regardless of the standard applied, however, the trial court erred in concluding that the evidence did not support an inference that the shooting occurred without premeditation.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Because a rational jury could have had a reasonable doubt as to premeditation, the Court of Appeals correctly rejected the trial court's reasoning about *Workman*'s factual prong. The trial court erred when it concluded that the evidence did not support an inference that second degree murder was committed to the exclusion of the greater charged offense of aggravated first degree (premeditated) murder.

> ii. For purposes of the *Workman* test, the relevant charged offense is aggravated first degree (premeditated) murder; accordingly, we consider only that offense when applying *Workman*'s factual prong

On appeal, the State did not argue that the evidence was insufficient to support an inference that second degree murder was committed to the exclusion of aggravated first degree premeditated murder.[6] Instead, it argued that even if the jury had a reasonable doubt as to premeditation, there was still no doubt that the fatal shooting occurred during the course of a burglary; thus, no juror could rationally conclude that Condon committed second degree intentional murder to the exclusion of first degree *felony murder*: "If the jury was convinced of [Condon's] involvement in the burglary, but not premeditation, the only murder charge on which they could have convicted was the alternative, felony murder." Br. of Resp't at 16.

In other words, although the State recognizes that under *Berlin* and *Warden*, aggravated first degree (premeditated) murder is the only relevant charged offense

---

[6] Br. of Resp't at 14-15; Suppl. Br. of Pet'r at 9-10.

15

for purposes of *Workman*'s legal prong, the State argues that under *Workman*'s factual prong we should also consider a *second* charged offense: first degree felony murder.

Condon does not argue that the evidence supports an inference that the fatal shooting occurred in a context other than a burglary. Instead, he argues—and the Court of Appeals agreed—that because the felony murder charge is irrelevant under *Workman*'s legal prong, it is also irrelevant under *Workman*'s factual prong.

There is admittedly some tension in our case law regarding the application of *Workman*'s factual test in cases where the State charges both intentional murder and felony murder. In some cases, we have applied *Workman*'s factual test just as Condon urges and the Court of Appeals did below. In those cases, we have asked whether the facts support an inference that the defendant committed the lesser crime to the exclusion of only one charged offense—the greater, charged offense relevant under *Workman*'s legal prong. *E.g.*, *Berlin*, 133 Wn.2d at 551-52 (concluding that *Workman*'s factual prong was satisfied because the evidence supported an inference that the defendant had no ability to form the "requisite intent to kill"—an intent necessary for conviction of charged second degree murder, but not for charged felony murder); *Warden*, 133 Wn.2d at 564 (same); *accord State v. Schaffer*, 135 Wn.2d 355, 357, 957 P.2d 214 (1998); *State v. Grier*, 171 Wn.2d 17, 25, 246 P.3d 1260 (2011). Under that approach, we do not inquire whether the facts *also* support

an inference that the defendant committed the lesser crime to the exclusion of the separate felony murder charged. *Berlin*, 133 Wn.2d at 551-52; *Warden*, 133 Wn.2d at 564.

But in other cases we have taken the approach advocated by the State. In those cases we have considered only one charged offense under *Workman*'s legal prong (intentional or premeditated murder), but *two* charged offenses under *Workman*'s factual prong (intentional or premeditated murder and felony murder). *E.g.*, *State v. Ortiz*, 119 Wn.2d 294, 313-14, 831 P.2d 1060 (1992); *State v. Bowerman*, 115 Wn.2d 794, 805-08, 802 P.2d 116 (1990). These cases proceed on the theory that while the felony murder charge is irrelevant under *Workman*'s legal test, it will still bar a lesser included offense instruction under *Workman*'s factual test when the evidence does not support an inference that the lesser offense occurred to the exclusion of the felony murder charged. *Ortiz*, 119 Wn.2d at 313-14; *Bowerman*, 115 Wn.2d at 805-08.

The tension between these cases—the *Ortiz* line and the *Berlin/Warden* line— highlights some difficult issues regarding the interaction between felony murder and lesser included offense instructions. These issues include whether felony murder can ever be considered a greater offense with respect to manslaughter[7] and whether

---

[7] *Compare State v. Tamalini*, 134 Wn.2d 725, 728-36, 953 P.2d 450 (1998) (holding that the defendant, who was charged with felony murder, was not entitled to a lesser included instruction on manslaughter, because manslaughter is neither a lesser included

felony murder can be an alternative offense to, or a lesser included offense of, aggravated premeditated murder.[8] The specific difficult issue presented in this case—and the only one we address—is whether we should follow the *Berlin* line, under which Condon is entitled to a lesser included offense instruction on second degree intentional murder, or the *Ortiz* line, under which he is not.

For two reasons, we affirm the *Berlin* line and disapprove the analysis in the *Ortiz* line. First, *Berlin* and its progeny are the more recent precedent. Thus, to the extent the *Ortiz* line is inconsistent, its reasoning has been undermined by the *Berlin* line.

Second, the reasoning in *Berlin* and its companion case, *Warden*, is significantly more in-depth than the reasoning in *Ortiz*. As explained above, *Berlin*

---

offense nor an inferior degree crime with respect to felony murder), *with Schaffer*, 135 Wn.2d at 358-59 (remanding for retrial on sole charge of felony murder, recognizing that the evidence supported an inference that only manslaughter occurred, and holding that the defendant would be entitled to a "lesser offense" instruction on manslaughter even though manslaughter is not a lesser included offense to felony murder under *Workman*'s legal prong).

[8] In *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 304, 868 P.2d 835, 870 P.2d 964 (1994), for example, we concluded that because "aggravated first degree murder and first degree felony murder are [neither] different means of committing the same offense, nor . . . greater and lesser offenses," the jury may be instructed on both offenses only when the State has included both charges in the information. We based this conclusion on *State v. Irizarry*, 111 Wn.2d 591, 594, 763 P.2d 432 (1988), in which we held that aggravated premeditated murder did not "include[]" the lesser crime of felony murder, even when the aggravator alleged was the fact that the homicide occurred during the commission of a felony. In this case, in contrast, the State explicitly charged aggravated murder and felony murder as "alternative" means of committing the same offense. CP at 302 (boldface omitted).

18

and *Warden* came to this court as a request to overrule the recent *Lucky* decision and prompted a wide-ranging analysis of this court's cases on felony murder and the *Workman* test. See discussion of *Berlin*, 133 Wn.2d at 547-49, and *Warden*, 133 Wn.2d at 562, *supra*, pp. 9-11. We do not overturn precedent lightly and did so in *Berlin/Warden* only after carefully considering questions of statutory interpretation, precedent, policy, and equity. Such considerations are entirely absent from the *Ortiz* decision. 119 Wn.2d at 31.

Under *Berlin*'s approach, which we now expressly affirm, a defendant charged with both intentional (or premeditated) murder and felony murder is entitled to a lesser included offense instruction if it satisfies both prongs of the *Workman* test *as to intentional (or premeditated) murder*. In other words, the party requesting an instruction on a crime that is a lesser offense of intentional or premeditated murder under *Workman*'s legal test does not need to show that it is also a lesser included offense of felony murder under the legal test, or that the evidence supports an inference that the lesser crime occurred to the exclusion of felony murder under the factual test.

We know this because the evidence in *Berlin* did not support an inference that the defendant had committed manslaughter—the lesser included offense instruction requested—to the exclusion of the alternatively charged felony murder. Instead, the evidence—from Berlin's own testimony—was that the defendant and the victim had

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"struggled" and that a gun in the defendant's possession had accidentally discharged during the "struggle[]." 133 Wn.2d at 552. These facts established that the defendant had, at the very least, accomplished a killing during the course of an assault.[9] Nevertheless, this court held that the defendant was entitled to the manslaughter instruction because "ample evidence was offered of [his] drinking to the point of potentially impairing his ability to form the requisite intent *to kill.*" *Id.* at 552 (emphasis added).

The intent to kill is necessary for conviction of intentional murder, but not for conviction of felony murder. *State v. Gamble*, 154 Wn.2d 457, 468-69, 114 P.3d 646 (2005). Thus, it is clear that in *Berlin*, the felony murder charge played no role in the application of *Workman*'s factual test. Under that factual test, just as under the legal test, the *Berlin* court focused only on the intentional murder charge and did not ask whether the evidence also supported an inference that manslaughter occurred to the exclusion of felony murder.

The same was true in *Warden*, 133 Wn.2d 559, which is even closer factually to Condon's case. In *Warden*, the defendant was charged with both first degree premeditated murder and felony murder predicated on robbery. *Id.* at 561. The

---

[9] *See State v. Byrd*, 125 Wn.2d 707, 712-13, 887 P.2d 396 (1995) (assault accomplished where defendant either "'attempt[s], with unlawful force, to inflict bodily injury upon another, [and has] the apparent present ability to give effect to the attempt if not prevented,'" or intentionally creates in the victim's mind a reasonable apprehension of harm (quoting *Howell v. Winters*, 58 Wash. 436, 438, 108 P. 1077 (1910))).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

defense asserted diminished capacity due to Warden's posttraumatic stress disorder; a defense expert testified that "it was his opinion that Warden lacked the mental capacity to form the intent to kill." *Id.* at 564. This court did not say anything about whether there was any evidence negating Warden's intent to rob. It nevertheless held that the defendant was entitled to an instruction on the lesser included offense of manslaughter because her evidence of diminished capacity supported an inference that she "lacked the intent *to kill* . . . yet . . . acted recklessly or negligently in causing [the victim's] death." *Id.* It made no inquiry into whether the evidence supported an inference that the defendant lacked the requisite intent to commit the robbery supporting the felony murder charge.

We apply the same analysis here. At Condon's trial, evidence was presented that supported an inference that second degree (intentional) murder occurred to the exclusion of premeditated murder. Under our *Berlin* line of cases, this is all that *Workman*'s factual prong requires.

Finally, as the dissent acknowledges, our controlling precedent holds that the erroneous failure to instruct the jury on a lesser included offense necessitates reversal. *See* dissent at 7 (citing *State v. Parker*, 102 Wn.2d 161, 164, 683 P.2d 189 (1984)). No one has argued that *Parker* is incorrect and harmful; thus, we may not hold this error harmless. *See In re Rights to Waters of Stranger Creek*, 77 Wn.2d

21

649, 653, 466 P.2d 508 (1970) (precedent will not be overturned absent a showing that it is both incorrect and harmful).

For the foregoing reasons, we affirm the decision of the Court of Appeals.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____ González, McCloud, J.

WE CONCUR:

_____          _____ Stephens, J.

_____          _____ Wiggins, J.

_____          _____

_____          _____ Dwyer, J.P.T.

GONZÁLEZ, J. (dissenting)—An instruction on a lesser included offense is available to either the prosecution or the defense under a two-pronged test articulated in *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The instruction is available when (1) the lesser included offense consists solely of elements that are necessary to convict on the greater, charged offense (the legal prong) and (2) the evidence presented in the case supports an inference that only the lesser offense was committed to the exclusion of the greater, charged offense (the factual prong). *State v. Berlin*, 133 Wn.2d 541, 546, 947 P.2d 700 (1997) (citing *Workman*, 90 Wn.2d at 447-48); *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000) (citing *State v. Bowerman*, 115 Wn.2d 794, 805, 802 P.2d 116 (1990)). The legal prong of the *Workman* test incorporates the constitutional requirement that a defendant must have notice of the offense of which he or she is charged. *Berlin*, 133 Wn.2d at 546 (citing *State v. Ackles*, 8 Wash. 462, 464, 36 P. 597 (1894)). If a defendant is charged with offenses in the alternative, the constitutional requirement of notice is satisfied as long as the legal test is met for one of the charged alternatives. *Id.*; *see also State v. Warden*, 133 Wn.2d 559, 562-63, 947 P.2d

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

708 (1997). I disagree with the majority opinion that from this it follows we can ignore the charged alternative when determining whether there is a factual basis to offer the lesser included instruction, and so I respectfully dissent.

Our lesser included statute, which dates back to 1854, was a codification of a common law rule dating back at least to 16th century English common law. RCW 10.61.006; LAWS OF 1854, § 123, at 20; *State v. Miller*, 841 N.W.2d 583, 586 (Iowa 2014) (quoting *State v. Jeffries*, 430 N.W.2d 728, 730 (Iowa 1988); Janis L. Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense*, 50 BROOKLYN L. REV. 191, 195 (1984)); *see also Berlin*, 133 Wn.2d at 544 (citing *Beck v. Alabama*, 447 U.S. 625, 633, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980)). The common law rule originally developed "as an aid to the prosecution when the evidence introduced at trial failed to establish an element of the crime charged." *Berlin*, 133 Wn.2d at 544 (citing *Beck*, 447 U.S. at 633); *see also Keeble v. United States*, 412 U.S. 205, 208, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973). The doctrine evolved to play an important role protecting procedural fairness and substantial justice for the accused as well. *See, e.g., Berlin*, 133 Wn.2d at 544-45. Courts observed that "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble*, 412 U.S. at 212-13 (emphasis omitted). Thus, a defendant must be able to argue an alternative theory of the case that is

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

supported by the evidence to guarantee him or her the full benefit of the reasonable doubt standard. *Id.*; *see also Berlin*, 133 Wn.2d at 544-45 (citing *Beck*, 447 U.S. at 633).

I would affirm our line of cases where we permitted an instruction only where the evidence presented would permit a rational jury to convict a defendant of the lesser crime and acquit on *both* charged alternative means of committing a crime. *See State v. Ortiz*, 119 Wn.2d 294, 314, 831 P.2d 1060 (1992); *Bowerman*, 115 Wn.2d at 807; *Warden*, 133 Wn.2d at 564. *Workman*'s factual prong requires that there is evidence to support an inference that *only* the lesser included offense was committed to the exclusion of the charged offense. *Fernandez-Medina*, 141 Wn.2d at 455 (citing *Bowerman*, 115 Wn.2d at 805). Where the State charges the defendant with alternative means of committing an offense, there is simply no factual basis for acquittal on the greater charge and conviction on the lesser if the test is met as to one charged alternative but not the other. Although criminal defendants should be given the benefit of the doubt and all fair inferences should be indulged, "there must be some rational basis for the lesser charge; otherwise it is merely a device for defendant to invoke the mercy-dispensing prerogative of the jury, and that is not by itself a permissible basis to require a lesser-included offense instruction." *United States v. Sinclair*, 144 U.S. App. D.C. 13, 444 F.2d 888, 890 (1971) (footnote omitted) (citing *Kelly v. United States*, 125 U.S. App.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

D.C. 205, 207, 370 F.2d 227, 229 (D.C. Cir. 1966)); *see also Sparf v. United States*, 156 U.S. 51, 63-64, 15 S. Ct. 273, 39 L. Ed. 343 (1895). Our lesser included jurisprudence has long emphasized the purpose of offering a lesser included instruction is not to "'invite the jury to find for a lower grade than is made by the evidence.'" *State v. McPhail*, 39 Wash. 199, 205, 81 P. 683 (1905) (quoting *State v. Wood*, 124 Mo. 412, 27 S.W. 1114, 1114 (1894) and citing *State v. Bailey*, 31 Wash. 89, 96, 71 P. 715 (1903)). Rather, it is to ensure the defendant receives the full benefit of the reasonable doubt standard where an alternative theory of the case is actually supported by the evidence.

In *Bowerman*, 115 Wn.2d at 807, we held it was not error for the trial court to decline first and second degree manslaughter instructions where Bowerman was charged with premeditated murder and, in the alternative, felony murder predicated on burglary. Bowerman brought a diminished capacity defense that went to negate her capacity to premeditate on, and form the intent to bring about, the death of the victim. We found that this evidence, which supported an inference that manslaughter was committed rather than premeditated murder, "did nothing, however, to negate Bowerman's alternative charge of first degree felony murder." *Id.* We pointed out that "Bowerman's testimony establishe[d] that she helped Hutcheson commit first degree burglary" and there was no testimony that Bowerman "could not form the intent to . . . plan the illegal entry." *Id.*

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We followed the same principle in *State v. Ortiz*, 119 Wn.2d 294, 831 P.2d 1060 (1992). Ortiz was charged with premeditated murder and, in the alternative, felony murder predicated on rape. We held an instruction on second degree murder was unsupported by the evidence because "[i]t was unrefuted that a rape was committed" and "the same person must have committed the rape and the murder, as evidenced by the footprints sealed in blood." *Id.* at 314. We concluded the instruction was not warranted then because "at the very least, the crime committed was first degree felony murder." *Id.*

In this case, an alternative theory that Condon committed the murder, but that he did so without intending to commit a burglary, is not supported by the evidence. Like in *Ortiz*, the crime committed was first degree felony murder at the very least. *Id.* The instructions as they were given to the jury permitted Condon to argue that the State failed to meet its burden of proof as to premeditation, an alternative theory that was supported by the evidence. Instead, Condon simply chose to argue that he did not participate in the events that night. Because the factual prong is not met as to both charged alternatives of first degree murder, the trial court properly denied a lesser included instruction.

The majority acknowledges there is tension in our case law regarding the application of *Workman*'s factual test in cases where the State charges

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

intentional murder and felony murder in the alternative. But the majority follows a line of cases where we ignored, for whatever reason, a charged alternative and asked only whether the facts supported an inference that the defendant committed the lesser crime to the exclusion of the greater, charged offense relevant under *Workman*'s legal prong. *See* majority at 16-17 (citing *Berlin*, 133 Wn.2d at 551-52; *State v. Shaffer*, 135 Wn.2d 355, 357, 957 P.2d 214 (1998); *State v. Grier*, 171 Wn.2d 17, 25, 246 P.3d 1260 (2011)). The only reasons the majority provides for its holding is that *Ortiz* is older and "the reasoning in *Berlin* . . . is significantly more in-depth" since *Berlin* "came to this court as a request to overrule [precedent]." Majority at 19. In *Berlin* we were asked to overrule our holding in *State v. Lucky*, 128 Wn.2d 727, 912 P.2d 483 (1996), that the legal prong of the *Workman* test could not be met unless the elements of the lesser crime were included in every statutory alternative of the charged crime, regardless of whether any of the alternatives were actually charged. *Berlin*, 133 Wn.2d at 547-49. We overruled *Lucky* and returned to an examination of the legal elements of the crime as actually charged and prosecuted. *Id.* at 548. There was no controversy in *Berlin* about how to decide whether there was a factual basis to offer the lesser included instruction, and the "in-depth reasoning" in *Berlin* does not examine the question before us.

I also dissent because, even if it was error not to give the lesser included instruction, it was harmless. A nonconstitutional error is harmless "'unless,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Gresham*, 173 Wn.2d 405, 425, 269 P.3d 207 (2012) (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

I recognize that in *State v. Parker*, 102 Wn.2d 161, 164, 683 P.2d 189 (1984), we noted we have never held that failure to give a warranted lesser included instruction may be harmless. In *Parker*, the trial court erroneously declined to give a lesser included instruction and the jury was given an all-or-nothing choice to convict of the charged crime or to acquit. *Id.* at 166. The nature of the error was such that it undermined confidence that the jury followed the instructions and gave the defendant the full benefit of the reasonable doubt standard, and so we did not employ the general presumption that the jury followed the court's instructions. *Id.* at 164 (quoting *State v. Young*, 22 Wash. 273, 276-77, 60 P. 650 (1900)). Instead, we declined to speculate on the probable results had the instruction been given. *Id.* (quoting *Young*, 22 Wash. at 276-77). But *Parker* is not controlling because in this case, the jury was not given an all-or-nothing choice. Other Washington courts have found the failure to give a lesser included instruction harmless where the jury was not presented with an all-or-nothing choice, and an omitted instruction would have been necessarily rejected because it is logically inconsistent with the verdicts the jury actually reached. *State v. Guilliot*, 106 Wn. App. 355,

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

368-69, 22 P.3d 1266 (2001); *State v. Hansen*, 46 Wn. App. 292, 296, 730 P.2d

706 (1986). We should follow this analytical approach.

For example, in *State v. Hansen*, 46 Wn. App. 292, 292, 730 P.2d 706

(1986), the defendant was convicted of first degree kidnapping and rape while

armed with a deadly weapon. The jury was instructed on the lesser included

crime of second degree kidnapping, but the trial court declined to instruct on

the lesser included crime of unlawful imprisonment. *Id.* at 295-96. The Court

of Appeals found it was error for the trial court to refuse the unlawful

imprisonment instruction, but found it was harmless because the jury rejected

the intermediate offense of second degree kidnapping. *Id.* at 298. The *Hansen*

court explained:

> In the case at bar, the jury was instructed on the intermediate
> offense of second degree kidnapping. If the jury believed that Hansen
> was less culpable because of his drug-induced mental disorder, logically
> it would have returned a conviction on the lesser crime of second degree
> kidnapping. Second degree kidnapping requires only an intent to abduct.
> To convict Hansen of first degree kidnapping, the jury had to find he
> intended to abduct the victim with the intent to facilitate the rape. In our
> view, the jury's verdict on the highest offense was an implicit rejection
> of all lesser included offenses that could have been based upon Hansen's
> diminished capacity defense.

*Id.*

Employing the same logic, the Court of Appeals in *Guilliot*, 106 Wn.

App. at 368-69, found that failing to instruct the jury on first and second degree

manslaughter (lesser included crimes of premeditated murder that were

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

warranted) was harmless because the jury was instructed on the intermediate offense of second degree murder. There, Guilliot argued the shooting was accidental. *Id.* at 369. The appellate court found the jury could have concluded he acted negligently or recklessly by failing to appropriately monitor his blood sugar or not acting with caution when showing the gun, but "[i]f the jury believed Guilliot was less culpable due to accident or hypoglycemia, logically it would have returned a verdict on the lesser offense of second degree murder." *Id.*

The verdicts entered in this case demonstrate the jury would not have convicted Condon of second degree murder had the instruction been given, and thus any error was harmless. In the absence of a reason to conclude otherwise, we presume juries follow the instructions given by courts. *State v. Ervin*, 158 Wn.2d 746, 756, 147 P.3d 567 (2006) (citing *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001)). The jury was accurately instructed on the elements of premeditated murder, and it entered a guilty verdict without reaching the felony murder alternative. Applying that presumption, it follows that the jury found the State proved premeditation. Even if the jury had rejected premeditation, a verdict on second degree murder to the exclusion of felony murder would have been inconsistent with the jury's guilty verdict on burglary. That guilty verdict tells us the jury was not in the position of finding Condon guilty of a murder without committing burglary.

The Court of Appeals erroneously concluded that any error in this case could not be harmless because the jury's attention was not effectively drawn to the difference between intent and premeditation. *State v. Condon*, noted at 174 Wn. App. 1041, 2013 WL 1628247, at *7-8. In fact, the jury was instructed on the definitions of "intent" and "premeditation" because both are elements of premeditated murder. RCW 9A.32.030(1)(a). At least one other jurisdiction has found the failure to instruct on a warranted lesser included offense is not harmless where the elements of the charged crime are clearer when they are viewed in contrast with the elements of a lesser included offense. *State v. Zolotoff*, 354 Or. 711, 719, 320 P.3d 561 (2014). In other words, the error is not harmless where an instruction on a lesser included offense would disclose a legal distinction that is not otherwise patent and would be helpful to the jury in deciding whether the defendant is guilty of the charged offense. For example, in *Zolotoff*, the defendant was convicted of possession of a weapon by an inmate and the Oregon Supreme Court found that an instruction on the lesser included offense—attempted possession of a weapon—would have illuminated a nuanced distinction that the alleged weapon was not in fact a weapon if it was only partially made into a weapon. *Id.* at 719-20. Unlike the scenario in *Zolotoff*, an instruction on second degree murder would not have provided any additional clarity about the distinction between intent and premeditation.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

I would hold *Workman*'s factual prong must be met as to both charged alternatives and so the lesser included instruction was not warranted. Moreover, even if there was instructional error here, it was harmless. Thus I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

González, J.

Fairhurst, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Condon (Joel Cameron)*

No. 88854-0

MADSEN, C.J. (concurring in the dissent)—I agree with the majority that Joel Condon was entitled to a jury instruction on second degree intentional murder as a lesser included offense to aggravated premeditated murder. However, considering that Condon bases his challenge to the failure to instruct on a lesser offense on lack of premeditation and the jury convicted Condon of premeditated murder and first degree burglary, as well as the fact that the jury followed the instructions, which included an admonishment not to consider felony murder unless it could not agree on aggravated premeditated murder, convinces me that the error in failing to give the lesser included instruction was harmless in this case. Therefore, I concur with the dissent in its harmless error analysis and its result.

Madsen, C.J.