**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58281-3-II |
| Respondent, | |
| v. | |
| CECIL JHURAY HART, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Cecil J. Hart appeals his convictions for two counts of assault in the second degree while armed with a firearm, drive-by shooting, and unlawful possession of a firearm in the first degree. He contends that the State failed to prove that he did not act in self-defense because it failed to prove that his use of force was not justified. Hart also contends the trial court unlawfully imposed a $500 crime victim penalty assessment (CVPA) and that his sentence on the assault convictions combined with his community custody term exceeds the statutory maximum. The State concedes the sentencing errors. We affirm Hart's convictions, but we accept the State's concessions and remand for resentencing to strike the CVPA and correct Hart's sentence on the assault convictions so that it does not exceed the statutory maximum.

FACTS

Demetrius Senter and his girlfriend, Melissa Jacobus, pulled into a gas station. Hart pulled into the gas station at roughly the same time. There was a misunderstanding about the use of a gas pump. Words were exchanged between Senter and Hart inside the gas station. The two continued

to argue as they returned to their vehicles. Hart left the gas station and was waiting to turn left at a nearby stoplight. Senter pulled up next to him in the right lane.

Senter and Hart continued to exchange words. A witness testified that as Senter began to pull up in the intersection, Hart pulled out a gun, reached through his vehicle's sunroof, and shot toward Senter's vehicle. The bullet went through the driver's side rear passenger door and hit the vehicle's center console, causing debris to hit Jacobus's leg. Jacobus sustained a bruise on her hip from where the shrapnel of the center console hit her leg.

The State charged Hart with two counts of assault in the first degree while armed with a firearm, one count of drive-by shooting, and one count of unlawful possession of a firearm.

During trial, Senter testified that Hart approached him inside the gas station and said, "'You almost hit my truck, and if you did, it would've been a problem.'" 2 Rep. of Proc. (RP) at 199. Hart related a different initial encounter. He testified that he calmly approached Senter, stating, "'Sir . . . [h]ey you almost hit my car.'" 3 RP at 317.

Both men testified that they argued inside the store and continued to argue outside. Senter further testified that at one point Hart lifted his shirt, revealing the butt of a handgun. He also testified that Hart was fidgety and braced the gun as if he was getting ready to pull it out. Senter backed up, pumped his gas, and continued to yell at Hart. Senter testified that he called Hart a coward and said, "'Drop the gun, and I guarantee I'll kick your ass.'" 2 RP at 203. He testified that Hart continued to clasp the gun at his waistband and replied, "'We'll see. Yeah, yeah. Come on. We'll see.'" 2 RP at 214.

Jacobus testified that during this time, Hart appeared shaken up, moving around quickly, and left once he was done pumping his gas. When the two met up at the intersection, the men began yelling again. Jacobus testified that Senter did not get out of the vehicle. Instead, she

2

recalled that Senter spit towards Hart's bumper and called him "a bitch." 2 RP at 166. Jacobus testified that it was at this point that she heard a pop and looked over and saw Hart's hand with a firearm coming down from the sunroof. She testified that neither she nor Senter had a gun with them.

Senter testified that while at the intersection, he and Hart continued to insult one another through their cars. Senter testified that at one point he (Senter) got out of his vehicle, but he was standing near the driver's door. He testified that he turned, went back in the car, and then a few seconds later it was "like, boom" and he noticed inside the car shrapnel from the bullet and heard Jacobus exclaim, "'I'm hit.'" 2 RP at 208-09. Senter testified that he did not see Hart's gun because "he had his back turned." 2 RP at 217.

Alfred Thompson was a witness to the intersection incident. He testified that he observed two men parked next to each other. Thompson saw the men exchanging words. Thompson testified that he did not see Senter get out of his vehicle, but he saw him lean out of his window. He testified that he observed Senter talking to Jacobus and appeared "to start[] to pull up a little bit" when Thompson looked back at Hart's vehicle and saw a hand come out of the sunroof and the gun was fired. 2 RP at 195. Thompson testified that "[Senter] was not even paying attention to [Hart] in the truck at that time when the shots were being fired." 2 RP at 196.

Hart testified in his defense that Senter kept yelling at him at the gas pump and made comments suggesting that Hart was in a gang. Hart testified that Senter went back to his vehicle and told Jacobus to open the door, but Jacobus said, "'No, we're not about to be doing that. Just get in the car so we can go.'" 3 RP at 320. Hart claimed that he thought Senter wanted Jacobus to open the car door so he could get a gun, so Hart grabbed his gun and stuck it in his pants. Once

3

Hart grabbed his gun, Senter said, "'You're a pussy. Only pussies carry guns.'" 3 RP at 349. At this point, Hart felt like he "got played" into thinking Senter had a gun. 3 RP at 349.

Hart testified that later, at the intersection, Senter stuck his head out of the window and continued to yell at Hart, but Hart could not hear him. Hart turned his music up, which made Senter mad. Hart said, "'Run along, run along.'" 3 RP at 326. Hart testified that he saw Senter begin to get out of his vehicle, but Jacobus appeared to grab him because Senter's door closed again. Hart testified that he then saw Senter come out of his vehicle again this time his "whole body" was out of the vehicle and Senter appeared to be "getting ready to walk towards [Hart]." 3 RP at 328. Hart then fired a "warning shot" through the sunroof at the back of Senter's vehicle.

The trial court granted Hart's request to instruct the jury on self-defense relating to the assault and drive-by shooting charges. At the State's request, the court also instructed the jury on the lesser crimes of assault in the second degree.

The jury found Hart not guilty of the two counts of assault in the first degree but guilty of the lesser offenses of assault in the second degree while armed with a firearm. The jury also found Hart guilty of drive-by shooting and unlawful possession of a firearm.

The trial court imposed standard range sentences on all counts, plus two consecutive firearm enhancements. The maximum sentence on the assault convictions was 120 months. The court sentenced Hart to 84 months for each of the assault in the second degree convictions plus a 36-month firearm enhancement on each count for a total of 120 months. The court also imposed 18 months of community custody on the drive-by shooting and two assault convictions and imposed a $500 CVPA fee after finding Hart indigent.

Hart appeals his judgment and sentence.

ANALYSIS

I.    SELF-DEFENSE

Hart contends that his convictions for two counts of assault in the second degree and drive-by shooting should be vacated because the State failed to disprove that he acted in self-defense. We disagree.

A.    Standard of Review

When a criminal defendant challenges the sufficiency of the evidence, we determine whether any rational juror could have found the essential elements of the charged crime beyond a reasonable doubt based on the evidence presented at trial. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). In making this determination, we view the evidence in the light most favorable to the State. *Id.* All reasonable inferences from the evidence are drawn in the State's favor and interpreted most strongly against the defendant. *Id.* We defer to the trier of fact regarding conflicting testimony, witness credibility, and persuasiveness of evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) We review de novo sufficiency of the evidence challenges. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

B.    Legal Principles

Relevant to this appeal, a person is guilty of assault in the second degree if they, under circumstances not amounting to assault in the first degree, assault another with a deadly weapon. RCW 9A.36.021(1)(c). A person is guilty of drive-by shooting if they "recklessly discharges a firearm . . . in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is . . . from a motor vehicle." RCW 9A.36.045(1).

Self-defense is a defense to assault and drive-by shooting. *See* RCW 9A.16.020. "The use, attempt, or offer to use force upon or toward the person of another is not unlawful . . .

5

[w]henever used by a party about to be injured, or . . . in preventing or attempting to prevent an offense against his or her person." RCW 9A.16.020(3). A defendant's use of force is lawful and self-defense can be asserted as a defense if the defendant subjectively and reasonably believes that the victim will inflict imminent harm. *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020).

"'The evidence of self-defense must be assessed from the standpoint of the reasonably prudent person standing in the shoes of the defendant, knowing all the defendant knows and seeing all the defendant sees.'" *Id.* (quoting *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999)). "If the defendant meets the 'initial burden of producing some evidence that his or her actions occurred in circumstances amounting to self-defense,' then the State has the burden to prove the absence of self-defense beyond a reasonable doubt." *Grott*, 195 Wn.2d at 266 (quoting *Riley*, 137 Wn.2d at 909).

C.    The State Met Its Burden to Disprove Self-Defense

Here, Senter, Jacobus, and Thompson testified that Senter was inside his vehicle when Hart shot at it. Thompson specifically testified that Senter was pulling his vehicle up, talking to Jacobus, and "not even paying attention to [Hart]" when Hart fired his gun. 2 RP at 196. And Senter specifically testified that he was not paying attention to Hart with his back turned and about to pull away when Hart fired his gun. Hart testified that Senter intimated that he had a gun and used threatening words during their argument, but this was before Hart fired at Senter's vehicle. While Hart claims Senter was outside his vehicle and coming toward Hart at the time he fired his gun, we leave witness credibility determinations to the trier of fact. *Thomas*, 150 Wn.2d at 874-75.

6

Given these facts, a reasonably prudent person would not believe Senter was about to inflict imminent harm at the time Hart fired his gun. Viewing this evidence in the light most favorable to the State, we hold that the State provided sufficient evidence that Hart did not act in self-defense. Accordingly, we affirm his convictions for two counts of assault in the second degree and drive-by shooting.

## II. CVPA

Hart next contends that the trial court erred by imposing a $500 CVPA. The State concedes the error. We accept the State's concession.

When the trial court sentenced Hart, it was required to impose a CVPA of $500 under former RCW 7.68.035(1)(a) (2018), even though it found him indigent. But that statute has since been amended. It now states that courts "shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." RCW 7.68.035(4); LAWS OF 2023, ch. 449, § 1. The amendment took effect July 1, 2023. LAWS OF 2023, ch. 449, § 27. Although these amendments took effect after Hart's sentencing, they apply to cases pending appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Therefore, we remand to the trial court to strike the CVPA.

## III. COMMUNITY CUSTODY

Hart lastly contends that the trial court exceeded its statutory authority by imposing 18 months of community custody on the assault in the second degree convictions The State concedes the error. We accept the State's concession.

Assault in the second degree is a class B felony, punishable by a maximum of 10 years of confinement (120 months). RCW 9A.36.021(2)(a); RCW 9A.20.021(1)(b). RCW 9.94A.701(10) provides, "The term of community custody specified by this section shall be reduced by the court

whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021."

Here, the trial court sentenced Hart to 84 months for each of the assault in the second degree convictions plus a 36-month firearm enhancement on each count. Because the court imposed a total of 120 months or 10 years in custody—84 months plus the 36-month sentencing enhancement—it did not have the authority to impose an additional 18 months of community custody. Therefore, we accept the State's concession and remand to the trial court to correct the sentencing error regarding the assault in the second degree convictions.

## CONCLUSION

We affirm Hart's convictions, but we accept the State's concessions and remand for resentencing to strike the CVPA and correct Hart's sentence so that it does not exceed the statutory maximum.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, J.

Cruser, C.J.