**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50675-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ISIAH D. MARTIN, | |
| Appellant. | |

GLASGOW, J. — Isiah Martin appeals from his conviction for first degree unlawful possession of a firearm and the resulting sentence. He asserts that (1) the State failed to present sufficient evidence to support the conviction, (2) the prosecutor made several improper arguments during closing argument, (3) the trial court abused its discretion when ordering him to register as a felony firearms offender, and (4) the trial court erred by imposing certain discretionary legal financial obligations. We affirm Martin's conviction but remand for resentencing solely for consideration of discretionary legal financial obligations in light of new law.

FACTS

In the middle of the night, Tacoma police officers Gerald Bratcher and Ryan Bradley went to the Pacific Lanes Bowling Alley in Tacoma in response to a call about a person in a Camaro "throwing garbage everywhere." Report of Proceedings (RP) at 324. Martin was alone in a Camaro, sitting in the driver's seat. Martin told the officers that he was paralyzed from the waist down.

Bratcher saw fast food garbage and what appeared to be a catheter bag containing urine on the ground next to the driver's side of the Camaro. Bratcher asked Martin to pick up the garbage. Martin braced himself by holding the steering wheel with his right hand before leaning

out of the vehicle and grabbing the garbage with his left hand. Martin placed the garbage near his feet in front of the driver's seat. Bradley saw that a pistol was located directly under where Martin was placing the garbage and alerted Bratcher. Bratcher ordered Martin to place his hands on the steering wheel, and Martin complied. Bratcher then removed the pistol from the vehicle.

Bratcher ran a records check and found that Martin had previously been convicted of a felony. Because his prior conviction made it illegal for him to possess a firearm, the officers detained Martin in his vehicle and called an ambulance to take him to the Pierce County Jail. While waiting for the ambulance to arrive, the officers saw a vehicle park at the far end of the parking lot. A woman got out of the passenger seat and ran toward the officers, yelling. She was later identified as True Treasure Bonds, Martin's girlfriend, caregiver, and the mother of his child.

The State charged Martin with first degree unlawful possession of a firearm.[1] At trial, Bratcher and Bradley testified consistently with the facts stated above. The parties stipulated that Martin had previously been convicted of a serious offense, and the trial court read the stipulation to the jury.

Bonds testified that she had provided care for Martin on a daily basis as his licensed home care aide since he became paralyzed from the chest down in 2015. She explained that Martin was able to drive with the use of driving sticks, which allowed him to operate the gas and brake pedals with his hands. Bonds also said that Martin was not able to open a car door on his own. He needed someone to open the door for him and "pretty much pick him up like a baby and put him in his seat." RP at 442.

---

[1] The State also charged Martin with three counts of unlawful possession of a controlled substance with intent to deliver. These charges were dismissed with prejudice and are not part of this appeal.

Bonds testified that she owned the Camaro that Martin was driving on the date of his arrest, as well as a second vehicle that was inoperable. She further testified that Martin drove her Camaro only in emergencies. Bonds reported that she had a concealed pistol license and owned several firearms, including the pistol found in her Camaro. Bonds said she was aware that Martin was prohibited from possessing firearms, so she stored them in locations in their home that he could not physically access. She left her pistol in the Camaro on the day Martin was arrested.

Bonds testified that she had been at a party in University Place on the night that Martin was arrested. A friend had driven her to the party and had planned to drive her home, but the friend changed her mind and ultimately would only bring Bonds halfway home. Bonds explained that she had attempted to call people after midnight to ask if they could pick her up halfway, but Martin was the only person available. Martin agreed to meet her at the bowling alley, which was a 10 minute drive from the party. Bonds acknowledged that someone would have had to help Martin into the car. When Bonds arrived at the bowling alley, she saw police surrounding her Camaro.

During the State's closing argument, the prosecutor discussed whether Martin had dominion and control over the vehicle and therefore, the firearm. The prosecutor argued that Bonds could drive and operate the vehicle and this gave him dominion and control. And the prosecutor argued that if Martin maneuvered himself into the car that night, he would have seen the firearm. Martin objected, asserting that the argument misstated the evidence, and the trial court overruled the objection. The State continued, "If the defendant can do all of those things, if he can maneuver that car safely over the roadway, then he's got dominion and control." RP at 549. Martin again objected, asserting that the State was misstating the law, and the trial court

3

again overruled the objection.  The State continued, "Why is that?  Because he's got control over the contents of, over the driving sticks that are inside the vehicle that's inside of it, the catheter bag that's by his feet and, guess what, the pistol that's also at his feet."  RP at 549.

Later, the State argued that Bonds's testimony about why Martin was at the bowling alley was not credible, suggesting that Bonds could have driven her second vehicle or that there were plenty of people Bonds could have asked for a ride home, rather than waking up Martin and requiring him to get assistance getting into the car in the middle of the night.  Martin objected, asserting that the State was misstating the evidence, and the trial court overruled the objection.

The State also argued:

> [Martin] is in the driver's seat here.  He can close those doors, he can keep those closed, he can lock those doors, he can drive away.  That, ladies and gentlemen, is an ability to exclude others from possession of that gun. . . .  If you find no more than that, you're finding that he's in constructive possession of the gun.

RP at 553-54.  Martin made an argument to the court about the burden to prove knowledge but did not formally object to this argument.

Finally, the State argued:

> He's got the capacity to maneuver those sticks, to maneuver that steering wheel, and that's actually probably tougher than what you and I do on a daily basis with two hands on the wheel and a foot on the pedals because he's got to do both of those with his hands.  He's got that dexterity.

RP at 554-55.  The State also pointed out Bonds's lack of familiarity with the vehicle's features:

> Miss Bonds, who claimed to own the car and drive it regularly, didn't know if it had power steering, didn't know if it had power locks, didn't remember much about it at all, including the year. . . .  Since this is a vehicle normally driven by the defendant, not only is he in constructive possession, and we know that because he's got the ability to have actual possession and exclude others from dominion and control over the vehicle, not only does he have constructive possession, but he's going to know about that gun because it's his car.

4

RP at 555. Martin did not object to this argument.

The jury found Martin guilty of first degree unlawful possession of a firearm. At sentencing, the trial court stated that it had reviewed Martin's criminal history, which includes an adult conviction of first degree promoting prostitution and juvenile convictions of taking a motor vehicle without permission, two counts of second degree theft, two counts of residential burglary, attempted residential burglary, second degree possession of stolen property, third degree theft, fourth degree assault, and making/having burglary tools.

The trial court ordered Martin to register as a felony firearm offender. The trial court said that there was a basis to impose the felony firearm offender registration requirement because Martin had a "propensity for violence," and referred to evidence that there were three guns in the household. RP at 593. But on the judgment and sentence, the trial court simply checked boxes indicating it had considered all of the statutory factors, without specifying which were determinative.

The trial court imposed legal financial obligations consisting of a $500 crime victim penalty assessment, a $100 DNA (deoxyribonucleic acid) collection fee, a $200 criminal filing fee, and a $5,000 fine. Regarding Martin's ability to pay the $5,000 fine, the trial court mentioned the cash that Martin had the night he was arrested, as well as the three guns and two cars in the household, apparently as evidence that Martin had some source of income sufficient to pay the fine. Martin appeals his conviction and sentence.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Martin contends that the State failed to present sufficient evidence to support his first degree unlawful possession of a firearm conviction. We disagree.

Evidence is sufficient to support a conviction if it permits any reasonable trier of fact to find the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the State. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). When evaluating sufficiency of the evidence, we assume the State's evidence is true and adopt reasonable inferences that a trier of fact could draw from that evidence. *Id*. Circumstantial evidence is no less reliable than direct evidence in this context. *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015). We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To convict Martin of first degree unlawful possession of a firearm, the State had to prove beyond a reasonable doubt that he (1) had been previously convicted of a serious offense and (2) knowingly possessed or controlled a firearm in Washington. Former RCW 9.41.040 (2014). Here, Martin stipulated to having been convicted of a serious offense prohibiting his possession of firearms and, thus, that element is not at issue.

With regard to possession or control, the State may prove this element by showing Martin had actual or constructive possession of a firearm. *State v. Manion*, 173 Wn. App. 610, 634, 295 P.3d 270 (2013). "'Actual possession'" means that the defendant had physical custody of the item, while "'constructive possession'" means that the defendant had dominion and control over the item. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994) (quoting *State v. Callahan*,

77 Wn.2d 27, 29, 459 P.2d 400 (1969)); *State v. Hathaway*, 161 Wn. App. 634, 646, 251 P.3d 253 (2011). Control need not be exclusive, but the State must show more than mere proximity to the firearm. *State v. Embry*, 171 Wn. App. 714, 747, 287 P.3d 648 (2012)*.*

When determining whether a defendant had dominion and control over an item, we examine the totality of the circumstances. *Staley*, 123 Wn.2d at 802. Relevant factors include whether the defendant could immediately take actual possession of the item or exclude others from the item. *See State v. McReynolds*, 117 Wn. App. 309, 341, 71 P.3d 663 (2003); *State v. Edwards*, 9 Wn. App. 688, 690, 514 P.2d 192 (1973). Additionally, "a jury may infer that a defendant has constructive possession of an item when that person has dominion and control over the premises where an item is located." *State v. Turner*, 103 Wn. App. 515, 524, 13 P.3d 234 (2000).

A fact finder can consider an automobile to be a premises for the purpose of determining whether the defendant exercised dominion and control over the premises where an item was found. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008); *State v. Coahran*, 27 Wn. App. 664, 668-69, 620 P.2d 116 (1980). Further, this court has recognized that an individual's sole occupancy of a vehicle and possession of the vehicle's keys sufficiently supports a finding that the defendant had dominion and control over the vehicle's contents. *State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010).

Here, the State presented evidence that, when viewed in its favor, was sufficient for a reasonable jury to find that Martin constructively possessed a firearm. Officers Bratcher and Bradley testified that Martin was able to lean outside the car with the assistance of the steering wheel and grab garbage that was located on the ground. Both officers further testified that Martin "plac[ed]" the garbage on the floorboard at his feet. RP at 289, 345. Bradley also

testified that he saw Martin place the garbage on top of a pistol that was within "an arm's length of the defendant." RP at 348.  From this evidence, a reasonable jury could find that Martin had the ability to immediately take actual possession of the firearm located at his feet.  Based on the testimony about the location of the firearm and Martin's placement of the garbage on top of the firearm, a reasonable jury could also infer that Martin had knowledge of the firearm's presence in the vehicle.

Martin argues that Bonds's testimony established that he lacked the physical ability to lift the firearm located at his feet.  But again, when evaluating the sufficiency of evidence supporting a conviction, we view the evidence in a light most favorable to the State.  *Condon*, 182 Wn.2d at 314.  And we do not reevaluate the credibility or evidentiary weight of Bonds's testimony, as those determinations are solely within the province of the jury.  *Thomas*, 150 Wn.2d at 874-75.

The State also presented sufficient evidence for a jury to find that Martin had constructively possessed the firearm.  Here, the undisputed testimony established that Martin drove the vehicle and that he was the vehicle's sole occupant while a firearm was located within the vehicle.  This was sufficient evidence from which a reasonable jury could find that Martin had dominion and control over the vehicle and this was sufficient for the jury to find that he constructively possessed the firearm located within the vehicle.  *Bowen*, 157 Wn. App. at 828. Accordingly, we hold that sufficient evidence supports Martin's first degree unlawful possession of firearm conviction.

## II.  PROSECUTORIAL MISCONDUCT

Martin next contends that the State made several improper arguments during its rebuttal closing argument.  Specifically, Martin claims that the State committed misconduct by

knowingly misstating the law, arguing improper inferences from the evidence, arguing facts not in evidence, and expressing a personal opinion regarding the evidence. We disagree.

To prevail on his claim of prosecutorial misconduct, Martin must show "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)). When determining whether a prosecutor committed misconduct in closing, we first consider whether the prosecutor's contested statements were improper. *State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009). If the prosecutor's statements were improper, we then consider whether there was a substantial likelihood that the improper statements affected the jury. *Id.*

If the defendant objected to the allegedly improper statements, we review the trial court's ruling on the objection for abuse of discretion. *In re Pers. Restraint of Sandoval*, 189 Wn.2d 811, 832, 408 P.3d 675 (2018). If, however, the defendant failed to object, the defendant is deemed to have waived any error unless he or she shows the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). To meet this heightened standard, "the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

We review allegedly improper arguments in the context of the total argument, the evidence addressed during argument, the issues in the case, and the trial court's instructions. *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994). "In closing argument the

prosecuting attorney has wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *Thorgerson*, 172 Wn.2d at 448.

Here, all of the challenged arguments applied the law to the facts, encouraged the jury to draw reasonable inferences from the evidence, or addressed reasons the jury might doubt the credibility of certain witnesses. None of the challenged arguments was improper.

First, Martin asserts that the State improperly argued that Martin's ability to operate the vehicle showed that he had dominion and control over the vehicle and, thus, constructive possession of the vehicle's contents. Martin contends that this argument was a knowing misstatement of law. We disagree.

When appropriately viewed in context, the State was not making any statement of law but was arguing that the facts supported the legal definition of "dominion and control" as provided in the jury instructions. Jury instruction 11 defined "constructive possession" as "dominion and control over the item," and allowed the jury to consider whether Martin had "dominion and control over the premises where the item was located." Clerk's Papers (CP) at 110. Martin's dominion and control over the vehicle was a factor that the jury could consider in evaluating whether he had constructively possessed the firearm contained in the vehicle. Therefore, it was proper for the State to argue that Martin's ability to operate the vehicle with the use of driving sticks established his dominion and control of the vehicle. Accordingly, Martin fails to demonstrate that this argument was improper.

Second, Martin asserts that the State erred by making impermissible inferences and "mock[ing] the testimony" of Bonds. Br. of Appellant at 23. Again, we disagree. Here, the State argued that Bonds's testimony regarding her need for Martin to pick her up at a location halfway between the party and their home was not credible:

10

> She testified she owned two vehicles. . . . [D]espite the fact that she had a ride back from that party with that friend, despite the fact she could have consulted with other friends, she said she decided to wake up her significant other, who's disabled and, apparently, a third party to help him get in the car and have him drive by himself without the child to a point what she called halfway in Tacoma just so that her friend wouldn't have to drive the full distance from University Place or Fircrest to Tacoma, saving 15 minutes.

RP at 550. There is nothing improper with this argument. A prosecutor has "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses," so long as the prosecutor does not express a personal opinion regarding the witness's credibility. *Thorgerson*, 172 Wn.2d at 448; *Anderson*, 153 Wn. App. at 428.

The State was not required to refrain from raising doubt as to Bonds's testimony about the operability of her second vehicle. And while Martin argues that the prosecutor referred to facts not in evidence by suggesting that Bonds could have gotten another ride home, nothing prevented the State from properly arguing that Bonds's testimony was not credible because she could have asked friends for a ride home rather than wake up Martin, and presumably another person to assist Martin in getting in the vehicle, in the middle of the night. All of these arguments to the jury were about disputed facts and the credibility of witnesses, both of which are up to the jury to decide. Martin fails to show misconduct on this ground.

Third, Martin asserts that the State misstated the evidence by arguing that he could close and lock the car doors even though Bonds testified that Martin lacks this ability.[2] Again, we disagree with Martin. The State was not required to credit Bonds's testimony. It was proper for the State to argue that the jury could infer Martin's ability to close and lock the car door based on

---

[2] Martin did not object at trial to the remaining closing arguments that he claims on appeal constituted misconduct. Because we hold that Martin fails to demonstrate that any of the prosecutor's remaining closing arguments were improper, we do not address whether the alleged misconduct was so flagrant and ill-intentioned as to be incurable by a jury instruction. *Emery*, 174 Wn.2d at 760-61.

evidence of his ability to pick up garbage from the ground and operate the vehicle with the aid of driving sticks.

Fourth, Martin asserts that the State committed misconduct by expressing a personal opinion about the dexterity required to operate driving sticks. Again, we disagree. The State argued:

> He's got the capacity to maneuver those sticks, to maneuver that steering wheel, and that's actually probably tougher than what you and I do on a daily basis with two hands on the wheel and a foot on the pedals because he's got to do both of those with his hands. He's got that dexterity.

RP at 554-55. When read in context, the State did not express a personal opinion regarding the dexterity required to operate driving sticks but, instead, suggested that the use of driving sticks requires greater dexterity because the vehicle's operator is required to control the steering wheel, gas, and brakes with their hands. This argument was supported by testimony regarding the process for driving with the aid of driving sticks. Accordingly, nothing was improper with this argument, and Martin's claim of prosecutorial misconduct on this ground fails.

Finally, Martin asserts that the State committed misconduct by impermissibly inferring that the Camaro was his car and, thus, he had knowledge of the Camaro's contents. Again, we disagree. Here, the State argued that the jury could infer that Martin regularly drove the Camaro because the vehicle was outfitted with driving sticks and a disabled placard, and because Bonds was unable to describe the vehicle's year or particular features. This argument was not improper because it was based on reasonable inferences from the evidence. Martin fails to demonstrate that the State committed misconduct. Therefore, we reject his prosecutorial conduct claim.

### III. FELONY FIREARM OFFENDER REGISTRATION

Martin contends that the trial court abused its discretion at sentencing by requiring him to register as a felony firearms offender. We disagree.

Former RCW 9.41.330 (2013) requires trial courts to decide whether to require a defendant convicted of a felony firearm offense to register as a felony firearms offender under RCW 9.41.333. Martin concedes that his present conviction for first degree unlawful possession of a firearm was a felony firearm offense under former RCW 9.41.010(8)(e) (2015).

The registration statute provides three nonexclusive factors that the trial court must consider when deciding whether to impose the felony firearms offender registration requirement: (1) the defendant's criminal history, (2) whether the defendant has previously been found not guilty by reason of insanity of any offense, and (3) evidence of the defendant's propensity for violence that would likely endanger persons. Former RCW 9.41.330(2)(a)-(c). The statute does not dictate that the trial court must explicitly articulate its consideration of each factor when determining whether to impose the registration requirement.

Because the trial court's decision to impose a registration requirement is discretionary, we review the decision under an abuse of discretion standard. *State v. Sherman*, 59 Wn. App. 763, 767 n.2, 801 P.2d 274 (1990). A trial court abuses its discretion if its decision "'is manifestly unreasonable or based upon untenable grounds or reasons.'" *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Here, the trial court considered each of these nonexclusive factors when determining whether to impose a registration requirement. The court considered Martin's criminal history, which includes an adult conviction of first degree promoting prostitution and multiple juvenile

convictions including, for example, residential burglary, attempted residential burglary, third degree theft, and fourth degree assault. The trial court also considered Martin's access to firearms. The facts underlying Martin's current conviction for first degree unlawful possession of a firearm, as well as Bonds's trial testimony that she stored several firearms within their shared home, supported the trial court's determination that Martin had access to firearms.

Martin contends that the trial court abused its discretion because there was no evidence supporting the trial court's comment at sentencing that "I think you have a propensity for violence." RP at 593. Martin is correct that there does not appear to be any evidence supporting this comment, either established at trial or based on Martin's criminal history, which does not include any convictions for a violent offense. *See* former RCW 9.94A.030(55) (2015) (defining "violent offense"). However, "'[a] trial court's oral or memorandum opinion is no more than an expression of its informal opinion at the time it is rendered. It has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment.'" *State v. Friedlund*, 182 Wn.2d 388, 394-95, 341 P.3d 280 (2015) (quoting *State v. Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966)). Here, Martin's judgment and sentence indicates that the trial court considered each of the nonexclusive factors under former RCW 9.41.330 when deciding to impose the felony firearm offender registration requirement, but it does not reveal which factor or factors the trial court found determinative in reaching its decision.

Because former RCW 9.41.330 requires only that the trial court consider all of the nonexclusive factors, but it does not require a trial court to articulate its specific reasons for imposing a registration requirement, Martin's judgment and sentence complies with the statute. And because Martin's extensive criminal history and his access to firearms supplied the trial

14

court with a tenable basis to impose the felony firearm offender registration requirement, we hold that the trial court did not abuse its discretion when imposing the requirement.

IV. IMPOSITION OF LEGAL FINANCIAL OBLIGATIONS

Martin contends that the trial court erred by imposing discretionary legal financial obligations absent an individualized inquiry of his ability to pay. The State concedes error. We accept the State's concession and remand for resentencing solely on the issue of determining appropriate discretionary financial obligations.

Under *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015), a trial court must make "an individualized inquiry into the defendant's current and future ability to pay" before imposing discretionary legal financial obligations. In *State v. Ramirez*, our Supreme Court held that this individualized inquiry requires the trial court to consider certain enumerated factors relating to the defendant's financial resources. 191 Wn.2d 732, 734, 744, 426 P.3d 714 (2018).

Here, as the State concedes, the trial court did not consider the required factors before imposing a discretionary $5,000 fine. Because the trial court did not conduct an adequate individualized inquiry as required under *Blazina* and *Ramirez* before imposing discretionary legal financial obligations, we remand for resentencing solely on the issue of determining the appropriate financial obligations.

Although Martin did not assign error to the trial court's imposition of the criminal filing fee and DNA collection fee, the trial court should revisit the imposition of those obligations as well in light of recent amendments to former RCW 10.01.160 (2015), former RCW 36.18.020 (2015), and former RCW 43.43.7541 (2015). The *Ramirez* court held that these amendments apply prospectively to defendants who had an appeal pending when the amendments were enacted. 191 Wn.2d at 747-49.

15

CONCLUSION

We affirm Martin's conviction for first degree unlawful possession of a firearm, we affirm the trial court's decision to require Martin to register as a felony firearm offender, and we remand for resentencing solely on the issue of appropriate legal financial obligations.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, J.

Maxa, C.J.