GORSUCH, J., dissenting

# SUPREME COURT OF THE UNITED STATES

## VANESSA STUART *v.* ALABAMA

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
CRIMINAL APPEALS OF ALABAMA

No. 17–1676.　Decided November 19, 2018

The petition for a writ of certiorari is denied.

JUSTICE GORSUCH, with whom JUSTICE SOTOMAYOR joins, dissenting from the denial of certiorari.

More and more, forensic evidence plays a decisive role in criminal trials today. But it is hardly "immune from the risk of manipulation." *Melendez-Diaz* v. *Massachusetts*, 557 U. S. 305, 318 (2009). A forensic analyst "may feel pressure—or have an incentive—to alter the evidence in a manner favorable to the prosecution." *Ibid.* Even the most well-meaning analyst may lack essential training, contaminate a sample, or err during the testing process. See *ibid.*; see also *Bullcoming* v. *New Mexico*, 564 U. S. 647, 654, n. 1 (2011) (documenting laboratory problems). To guard against such mischief and mistake and the risk of false convictions they invite, our criminal justice system depends on adversarial testing and cross-examination. Because cross-examination may be "the greatest legal engine ever invented for the discovery of truth," *California* v. *Green*, 399 U. S. 149, 158 (1970) (internal quotation marks omitted), the Constitution promises every person accused of a crime the right to confront his accusers. Amdt. 6.

That promise was broken here. To prove Vanessa Stuart was driving under the influence, the State of Alabama introduced in evidence the results of a blood-alcohol test conducted hours after her arrest. But the State refused to bring to the stand the analyst who performed the test. Instead, the State called a *different* analyst. Using the

results of the test after her arrest and the rate at which alcohol is metabolized, this analyst sought to estimate for the jury Ms. Stuart's blood-alcohol level hours earlier when she was driving. Through these steps, the State effectively denied Ms. Stuart the chance to confront the witness who supplied a foundational piece of evidence in her conviction. The engine of cross-examination was left unengaged, and the Sixth Amendment was violated.

To be fair, the problem appears to be largely of our creation. This Court's most recent foray in this field, *Williams* v. *Illinois*, 567 U. S. 50 (2012), yielded no majority and its various opinions have sown confusion in courts across the country. See, *e.g., State* v. *Dotson*, 450 S. W. 3d 1, 68 (Tenn. 2014) ("The Supreme Court's fractured decision in *Williams* provides little guidance and is of uncertain precedential value"); *State* v. *Michaels*, 219 N. J. 1, 31, 95 A. 3d 648, 666 (N. J. 2014) ("We find *Williams*'s force, as precedent, at best unclear"); *United States* v. *Turner*, 709 F. 3d 1187, 1189 (CA7 2013); *United States* v. *James*, 712 F. 3d 79, 95 (CA2 2013).

This case supplies another example of that confusion. Though the opinion of the Alabama court is terse, the State defends it by arguing that, "[u]nder the rule of the *Williams* plurality," the prosecution was free to introduce the forensic report in this case without calling the analyst who prepared it. Brief in Opposition 6. This is so, the State says, because it didn't offer the report for the truth of what it said about Ms. Stuart's blood-alcohol level at the time of the test, only to provide the State's testifying expert a basis for estimating Ms. Stuart's blood-alcohol level when she was driving.

But while *Williams* yielded no majority opinion, at least five Justices rejected this logic—and for good reason. After all, why would any prosecutor bother to offer in evidence the nontestifying analyst's report in this case except to prove the truth of its assertions about the level of

alcohol in Ms. Stuart's blood at the time of the test? The whole point of the exercise was to establish—*because of the report's truth*—a basis for the jury to credit the testifying expert's estimation of Ms. Stuart's blood-alcohol level hours earlier. As the four dissenting Justices in *Williams* explained, "when a witness . . . repeats an out-of-court statement as the basis for a conclusion, . . . the statement's utility is then dependent on its truth." 567 U. S., at 126 (opinion of KAGAN, J.). With this JUSTICE THOMAS fully agreed, observing that "[t]here is no meaningful distinction between disclosing an out-of-court statement so that the factfinder may evaluate the [testifying] expert's opinion and disclosing that statement for its truth." *Id.*, at 106 (opinion concurring in judgment).

Faced with this difficulty, the State offers an alternative defense of its judgment in this case. Even if it did offer the forensic report for the truth of its assertion about Ms. Stuart's blood-alcohol level at the time of her arrest, the State contends that the Sixth Amendment right to confrontation failed to attach because the report wasn't "testimonial." Brief in Opposition 9.

But piecing together the fractured decision in *Williams* reveals this argument to be mistaken too—and this time in the view of *eight* Justices. The four-Justice *Williams* plurality took the view that a forensic report qualifies as testimonial only when it is "prepared for the primary purpose of accusing a targeted individual" who is "in custody [or] under suspicion." 567 U. S., at 84. Meanwhile, four dissenting Justices took the broader view that even a report devised purely for investigatory purposes without a target in mind can qualify as testimonial when it is "made under circumstances which would lead an objective witness reasonably to believe that [it] would be available for use at a later trial." *Id.*, at 121 (KAGAN, J., dissenting) (internal quotation marks omitted). But however you slice it, a routine postarrest forensic report like

the one here must qualify as testimonial. For even under the plurality's more demanding test, there's no question that Ms. Stuart *was* in custody when the government conducted its forensic test or that the report *was* prepared for the primary purpose of securing her conviction.

Respectfully, I believe we owe lower courts struggling to abide our holdings more clarity than we have afforded them in this area. *Williams* imposes on courts with crowded dockets the job of trying to distill holdings on two separate and important issues from four competing opinions. The errors here may be manifest, but they are understandable and they affect courts across the country in cases that regularly recur. I would grant review.