2019 PA Super 9

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC L.L. LEANER | : | |
| | : | |
| Appellant | : | No. 471 EDA 2016 |

Appeal from the Judgment of Sentence April 4, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002556-2012

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

CONCURRING OPINION BY BOWES, J.:        **FILED JANUARY 08, 2019**

I join my distinguished colleagues except as to the following.  Regarding the Pa.R.Crim.P. 600 issue, I concur; however, I would hold that the issue was not preserved, as Appellant, who was represented by counsel, filed that motion *pro se*.  As that renders the motion a legal nullity, there is nothing for this Court to review.  With respect to the Confrontation Clause issue, unlike the Majority, I would find that Appellant's rights were violated but that the error was harmless beyond a reasonable doubt.

## I.    **Rule 600 Claim**

The Majority discusses the merits of Appellant's Rule 600 motion, which was filed *pro se*.  However, Appellant was represented by counsel, who did not adopt the motion.  On November 21, 2013, in the midst of trial, counsel informed the court that Appellant wanted the judge to address his *pro se* motion.  As indicated by the following exchange, trial counsel declined to adopt

_____
*   Former Justice specially assigned to the Superior Court.

the motion,[1] and the trial court conducted a brief review of the record to placate Appellant:

> **MR. WOLF**: I did make a thorough examination of the docket, but it was my examination [*sic*] there are numerous defense continuances in this case early on before I became counsel.
>
> After I became counsel, there were numerous defense [continuances] for investigation. It was my opinion, generally, I didn't believe the Rule 600 rights were violated. I had no intention of litigating a Rule 600 motion on this case.
>
> However, [Appellant] wanted to address Your Honor. If Your Honor wants to hear [Appellant] on it, I would certainly advise Your Honor he felt that I was not following his instructions on litigating this motion.
>
> **THE COURT**: It's filed. Have counsel --
>
> **MR. WOLF**: I didn't mean to interrupt, Your Honor.
>
> **THE COURT**: So [Appellant] understands, I'll quickly look through the docket to confirm what Mr. Wolf is saying. . . .
>
>     . . . .
>
> **MR. WOLF**: As I indicated, Your Honor, my opinion, I don't believe Rule 600 is ripe in this case. [Appellant] and I disagree on this point. I'm raising it because [Appellant] wants to raise it.

N.T., 11/21/13, at 5-8.

---

[1] The remedy provisions of Pa.R.Crim.P. 600 state: "When a defendant has not been brought to trial within the time periods set forth in paragraph (A), **at any time before trial**, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed[.]" Pa.R.Crim.P. 600(D)(1) (emphasis added). Thus, even if counsel had decided to adopt the motion, the trial court could not grant relief mid-trial.

Appellant could not litigate a *pro se* Rule 600 motion while he was represented. ***See Commonwealth v. Nischan***, 928 A.2d 349, 355 (Pa.Super. 2007) ("Appellant had no right to file a *pro se* motion because he was represented by counsel. This means that his *pro se* post-sentence motion was a nullity, having no legal effect.") (citation omitted). Accordingly, this motion did not exist and there is nothing to review. Moreover, adjudicating this claim on the merits erroneously deprives Appellant of the ability to raise the issue in collateral proceedings. I therefore concur.

## II. Confrontation Clause Claim

Doctor Blanchard[2] of the Philadelphia Medical Examiner's Office conducted the autopsy and authored a report. She retired prior to trial and the Commonwealth called Gary Collins, M.D., a fellow medical examiner employed by the same office, to testify in her place. Appellant stated that he "should have an opportunity to confront and cross-examine Dr. Blanchard as the expert who conducted the actual post-mortem examination." N.T. Trial, 11/20/13, at 157. The trial court overruled the objection.

Appellant's Confrontation Clause claim arises in two separate, albeit linked, contexts. The first concerns the admission into evidence of the autopsy report. I agree with the Majority that Appellant waived any objection to the

---

[2] The doctor's first name was not stated.

- 3 -

admission of the report itself.[3]  The second concerns Dr. Collins's expert opinion testimony, which was premised, in part, on material contained within Dr. Blanchard's report.  Citing **Commonwealth v. Brown**, 185 A.3d 316 (Pa. 2018), my distinguished colleagues find that there is no Confrontation Clause violation concerning that testimony.  As explained *infra*, the Majority's quoted passage is from a portion of **Brown** that did not garner a majority.

For the following reasons, my views align with the competing view of this issue, as expressed by Justice Donohue's concurring opinion, joined by Chief Justice Saylor, and Justice Wecht.  I would hold that Appellant's Confrontation Clause rights were violated by the admission of any testimony concerning the autopsy report.  A review of the pertinent testimony leads me to conclude that there is insufficient evidence to find that Dr. Collins independently reviewed the underlying autopsy data.  However, under the circumstances of this case, I believe that any error was harmless beyond a reasonable doubt, because the remaining portions of Dr. Collins's testimony relied upon non-testimonial medical records.  I therefore concur.

Some years ago, a photograph of a dress gained national attention for the simple reason that about half the viewers were convinced the dress was

---

[3]  The Commonwealth argues that the trial court "did not admit the autopsy report into evidence[.]"  Commonwealth's brief at 16.  However, as noted by the trial court, the autopsy report was marked as an exhibit and all exhibits were later moved into evidence.

black and blue, while the other half was sure that the dress was white and gold. Whether an expert can render an opinion based on testimonial hearsay is a jurisprudential version of that photograph. Some see a constitutional violation plain as day, while others are equally certain that there is no problem whatsoever.

The divergent views are illustrated by **Williams v. Illinois**, 567 U.S. 50 (2012), a plurality decision from the United States Supreme Court addressing a similar factual scenario. Five Justices determined that there was no Confrontation Clause violation. Justice Kagan, joined by Justices Scalia, Ginsburg, and Sotomayor, thought obvious the contrary result: "Under our Confrontation Clause precedents, this is an open-and-shut case." **Id**. at 119 (Kagan, J., dissenting). **Williams** lacks a clear holding as Justice Thomas, who provided the fifth vote, did not agree with the lead opinion's logic. Thus, as Justice Kagan observed: "But in all except its disposition, [the lead] opinion is a dissent: Five Justices specifically reject every aspect of its reasoning and every paragraph of its explication." **Id**. at 120.[4] Our Supreme Court similarly split in **Brown**.

_____

[4] The United States Supreme Court recently declined an opportunity to clarify **Williams**. Justice Gorsuch, joined by Justice Sotomayor, dissented from the denial of certiorari in **Stuart v. Alabama**, 139 S. Ct. 36 (Nov. 19, 2018), wherein the State defended the admission of a forensic report on the grounds an expert could rely on the report in rendering an opinion. Justice Gorsuch wrote:

I agree with the views of the dissent in **Williams**. The Commonwealth cannot circumvent the Confrontation Clause's protections by having an expert witness rely on otherwise inadmissible testimonial hearsay. That is rather like

_____

To prove Vanessa Stuart was driving under the influence, the State of Alabama introduced in evidence the results of a blood-alcohol test conducted hours after her arrest. But the State refused to bring to the stand the analyst who performed the test. Instead, the State called a *different* analyst. Using the results of the test after her arrest and the rate at which alcohol is metabolized, this analyst sought to estimate for the jury Ms. Stuart's blood-alcohol level hours earlier when she was driving. Through these steps, the State effectively denied Ms. Stuart the chance to confront the witness who supplied a foundational piece of evidence in her conviction. The engine of cross-examination was left unengaged, and the Sixth Amendment was violated.

To be fair, the problem appears to be largely of our creation. This Court's most recent foray in this field, **Williams v. Illinois**, 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), yielded no majority and its various opinions have sown confusion in courts across the country. . . . . .

. . . .

Respectfully, I believe we owe lower courts struggling to abide our holdings more clarity than we have afforded them in this area. **Williams** imposes on courts with crowded dockets the job of trying to distill holdings on two separate and important issues from four competing opinions. The errors here may be manifest, but they are understandable and they affect courts across the country in cases that regularly recur. I would grant review.

**Id**. at 36-37.

saying a GPS device can give you the right directions even if you enter the wrong address.[5]

The respective opinions in **Brown** offer scholarly and in-depth discussions of the relevant United States Supreme Court precedents, and I refer the reader to those pages. For present purposes, all members of our Supreme Court agreed that

> the primary purpose for preparation of an autopsy report under these circumstances is to establish or prove past events potentially relevant to a later criminal prosecution and that any person creating the report would reasonably believe it would be available for use at a later criminal trial. Thus, we conclude the autopsy report in this case was testimonial.

*Id*. at 329. There is no reason to conclude that the autopsy report herein was not conducted for the same purposes. Hence, the report was testimonial, and therefore inadmissible without the testimony of its author. All Justices further agreed that the constitutional error in introducing the report was harmless beyond a reasonable doubt, but divided as to why.

In finding no Confrontation Clause violation in the case at bar, the Majority adopts the reasoning of Justice Dougherty, joined by Justices Baer and Todd. Those Justices determined that the erroneous admission of Dr.

---

[5] Charles Babbage, sometimes called the father of computers, wrote: "On two occasions I have been asked,—'Pray, Mr. Babbage, if you put into the machine wrong figures, will the right answers come out?' . . . I am not able rightly to apprehend the kind of confusion of ideas that could provoke such a question." Charles Babbage, *Passages from the Life of a Philosopher* 67 (London, Logman & Co. 1864).

Chu's report was "merely cumulative of Dr. Chu's independent opinion regarding the cause of death which was properly admissible." *Brown*, *supra* at 330. Justice Dougherty opined that Dr. Chu's testimony was independently rendered for the following reasons:

> Here Dr. Chu formed an independent conclusion and testified to that conclusion based on his own review of both the otherwise inadmissible facts and data contained in the report and the data provided by the autopsy photographs. Because Dr. Chu properly formed an independent opinion, and was available to be cross-examined regarding the basis of that opinion, we conclude there was no Confrontation Clause violation with respect to his opinion regarding the cause of death. Additionally, Dr. Chu's testimony was sufficient to satisfy the Commonwealth's evidentiary burden regarding the victim's cause of death.
>
> The Superior Court, however, also determined to the extent Dr. Chu acted as a surrogate for Dr. Osbourne and expressed Dr. Osbourne's opinion regarding the cause of death, Dr. Chu's testimony was similar to the surrogate testimony rejected by the Court . . . as violating the Confrontation Clause. *Brown*, 139 A.3d at 219–20 n.20. Specifically, the jury heard, through Dr. Chu, that Dr. Osbourne had also concluded the victim's cause of death was four gunshot wounds. We determine any error that arose from Dr. Chu's testimony revealing Dr. Osbourne's opinion as contained in the report was harmless beyond a reasonable doubt because Dr. Chu's independent opinion testimony satisfied the Confrontation Clause and the Commonwealth's evidentiary burden of proof.

*Id*. at 332–33.

Thus, the Justices determined that Dr. Chu rendered an independent opinion based on his review of raw data, *e.g.* the photographs and the descriptions of the wounds in the autopsy report, and applied his own expertise. Hence, the actual Confrontation Clause violation occasioned by

admission of the report was harmless in light of that properly-introduced independent opinion testimony.

Alternatively, Justice Dougherty suggested that there is no constitutional issue when an expert testifies to testimonial hearsay that experts reasonably rely upon per the rules of evidence relating to expert witnesses.[6]  While this analysis was also addressing the harmless error resulting from the admission of a testimonial autopsy report—a circumstance not at issue herein due to a failure to object to admission of the report—it suggested that there is no Confrontation Clause issue when an expert testifies to testimonial statements that the Commonwealth could not introduce directly.

> [H]ad the autopsy report **not** been introduced into evidence at trial, Pa.R.E. 703 and 705 would arguably permit precisely the type of expert opinion testimony given by Dr. Chu, which was based in part on the otherwise inadmissible facts and data contained in the report upon which experts in the field of forensic pathology would reasonably rely in forming an opinion.

*Id*. at 331 (emphasis in original).

Since neither aspect of Justice Dougherty's harmless error analysis garnered a majority of the Court, it is not binding.  The Majority's decision to

---

[6] Justice Dougherty's plurality noted its view that the rules of evidence might permit Dr. Chu's testimony in cases where the report was not introduced, but stressed "our holding that Dr. Chu could properly offer an independent opinion is based not on Rule 703, but on our analysis of relevant Confrontation Clause jurisprudence[.]" *Commonwealth v. Brown*, 185 A.3d 316, 332 n.13 (Pa. 2018).

adopt that view is certainly a viable approach, but I favor the competing view set forth by Justice Donohue's concurring opinion, joined by Chief Justice Saylor and Justice Wecht. The opinion, like Justice Dougherty's, cogently explains its analysis, and I therefore limit my remarks to a few salient points.

Addressing the theory that an expert may reasonably rely upon testimonial data in giving an opinion, Justice Donohue opined:

> [P]ermitting Dr. Chu to so testify was error, as it permitted the Commonwealth to do indirectly what it could not do directly, namely, to advise the jury of the findings and opinions of Dr. Osborne without providing Brown with an opportunity to cross-examine him. The introduction of testimonial forensic evidence without cross-examination of the analyst who performed the work is a clear violation of the confrontation rights of the accused, and I cannot join in the plurality's decision to ignore this basic constitutional principle.
>
> . . . .
>
> In the present case . . . Dr. Chu clearly should not have been permitted, in Dr. Osborne's absence, to testify regarding the contents of Dr. Osborne's testimonial autopsy report. Dr. Chu did not participate in, assist with or observe the autopsy performed by Dr. Osborne. The plurality takes no constitutional issue with the trial court's decision to allow Dr. Chu to convey to the jury the results of Dr. Osbourne's work, including the location of the bullet wounds, the trajectory of the bullets through the victims' body, the nature of the wounds (perforating versus penetrating), and the distance from which the victim was shot. Op. at 331; N.T., 11/5/2014, at 124–28.

*Id*. at 334-35 (footnote omitted).

Justice Donohue found that the error was harmless due to the fact that the Commonwealth is not required to provide medical testimony to establish causation beyond a reasonable doubt in a murder prosecution. *Id*. at 340.

Its burden may be met by showing that the action of the defendant constituted a direct and substantial factor in causing the death. Justice Donohue stated that "several witnesses testified to hearing and/or seeing Brown shoot the victim multiple times, and afterwards, observing the victim laying on the ground." *Id*. Additionally, the victim was unresponsive and bleeding from multiple gunshot wounds when the officers arrived. Finally, there was no evidence that the victim died of anything other than the gunshot wounds.

Justice Mundy filed a concurrence, emphasizing Justice Donohue's point that several witnesses testified as to seeing or hearing gunshots.[7] Her analysis ended there, finding that Dr. Chu's testimony was not prejudicial for that same reason and therefore offered no opinion on the expert witness question.

I find that Dr. Collins did not render an independent opinion, and as a result any testimony concerning the autopsy report violated the Confrontation Clause.[8] I would further find that any Confrontation Clause error was

_____

[7] Justice Dougherty's plurality disagreed: "We have great hesitation equating an eyewitness's lay testimony observing a victim was shot with expert medical testimony stating the cause of death, even in cases where the cause of death appears obvious." *Id*. at 333 n.14.

[8] A review of the challenged testimony leads me to question whether Dr. Collins rendered an independent opinion as to Dr. Blanchard's findings or merely accepted them as reliable. N.T., 11/20/13, at 169-70. While Dr. Collins stated that he reviewed the photographs and the autopsy report, and rendered an independent opinion based on that review, I find that more explanation was required beyond that conclusory statement. A technical

harmless beyond a reasonable doubt. Justice Donohue's concurrence in *Brown* determined that "In the absence of the autopsy report and Dr. Chu's testimony . . . there was competent evidence presented at trial" to support causation. *Id*. at 340. Applying that same principle, I find that Dr. Collins rendered an independent opinion as to causation based on material not subject to the Confrontation Clause.

At the outset, there is a significant distinction between *Brown* and the present case. Justice Donohue noted that "Brown's defense did not involve challenging the cause of the victim's death in any respect." *Id*. at 340. In contrast, Appellant challenged causation and maintains that the victim died from some malady other than complications caused by his attack. That fact suggests that the error was not harmless beyond a reasonable doubt.

However, Appellant's causation argument asserted that the evidence was insufficient even if Dr. Blanchard had testified. His brief states:

> Dr. Gary Collins, a Deputy Chief Medical Examiner, testified as an expert in forensic pathology. He did not perform the post-mortem examination in this matter; the doctor who did so, Dr. Blanchard, had retired at some point between examination of the decedent's body and the trial in this matter. Dr. Collins' testimony revealed that the decedent had been to at least four medical facilities after

_____

distinction to be sure, but Dr. Collins stated that he reviewed the autopsy report, not the underlying data itself. I view the former as inadequate to support the notion that the opinion was truly independent. Finally, the autopsy report was admitted into evidence and presumably available to the jury. While Appellant failed to object to admission of the report, there is a clear risk that the jury would attach significance to the report itself in conjunction with Dr. Collins's testimony that referenced said report.

the incident in question. The decedent passed away on January 17, 2010, 124 days after the incident.

Dr. Collins described the evidence of remote injury at the time of his death, including discoloration consistent with a healed brain contusion and healed bone surgery. Dr. Collins also testified that the decedent had high blood pressure, lymphoma, and possibly lung cancer, but that those conditions did not have an effect on him prior to this incident. **It is unclear how a forensic pathologist who does not see living patients and who never knew the decedent in life would be able to draw such a conclusion, regardless of whether they were the actual pathologist who conducted the autopsy**.

Appellant's brief at 24 (emphasis added, citations to transcript omitted). Hence, Appellant avers that causation was impossible to establish *via* the testimony of **any** forensic pathologist, including Dr. Blanchard.

As the Majority's factual recitation aptly explains, Dr. Collins reviewed the medical records from the facilities which treated Mr. McNeil following Appellant's attack. He explained that surgeons at the first hospital inserted a drain to remove fluid accumulating on Mr. McNeil's brain, and opined that death would have occurred shortly after the beating but for the immediate medical care. *See* Majority Opinion at 12-14. In turn, Dr. Collins reviewed the complications that occurred resulting from Appellant's attack and attributed his ultimate death to the attack. "[W]ith the lack of improvement, I can then correlate and say, well, there's no intervening factor between this assault and him getting better and his death. So the initial event had to have played a significant role in his overall conditioning to end [with] his death four months later." N.T., 11/20/13, at 182. Thus, Dr. Collins was familiar with the

- 13 -

medical records and personally reviewed them at length, and his opinions based on that review supplied adequate evidence of an unbroken chain of causation. *See Commonwealth v. Thompson*, 660 A.2d 68 (Pa.Super. 1995) (assailant struck eighty-four-year-old man with a piece of brick, causing two subdural hematomas; while victim recovered and was discharged, his later death was a direct result of the hematomas). I would hold that those medical records were non-testimonial and, therefore, Dr. Collins could validly rely on them. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009) ("[M]edical reports created for treatment purposes . . . would not be testimonial under our decision today.").

Accordingly, removing any inadmissible testimony concerning the autopsy findings leaves intact the testimony based upon Dr. Collins's review of the medical treatment records, which I submit supplied an adequate basis for the jury to reach the issue of causation. Any error occasioned by Dr. Collins's reference to the autopsy report was thus harmless beyond a reasonable doubt. I therefore concur as to this issue.