# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59571-1-II |
| Respondent, | |
| v. | |
| JOHN EDWARD ROACH, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—John Edward Roach appeals his convictions for first degree arson and second degree burglary and his exceptional sentence. He argues that (1) the trial court violated his federal and state constitutional rights by permitting him to waive his right to counsel and represent himself even though he did not understand the maximum penalty he faced, and (2) the jury's special verdict finding the aggravating sentencing factor was not factually or legally supported. In a statement of additional grounds on appeal, RAP 10.10, and a supplemental statement of additional grounds, Roach further argues that (1) the trial court erred when it denied his motions to dismiss brought under former CrR 8.3(b) (2008),[1] (2) the evidence was insufficient because the State failed to present forensic evidence, and (3) his appellate counsel's representation was deficient because they failed to raise the CrR 8.3(b) issue on appeal.

---

[1] The legislature amended this rule in 2025.

We hold that the trial court did not abuse its discretion when it granted Roach's motion to waive his right to counsel and represent himself, but we agree with Roach that the aggravating factor is not supported by sufficient evidence.

With regard to Roach's arguments made in his statement of additional grounds, we hold that the trial court did not err when it denied Roach's motions to dismiss and that sufficient evidence supports Roach's convictions. We do not address Roach's claim of ineffective assistance of appellate counsel because it is outside the scope of a statement of additional grounds.

Accordingly, we affirm Roach's convictions. But we remand this matter to the trial court to strike the aggravator and the exceptional portion of the sentence attributable to the aggravator.

FACTS

I. BACKGROUND

On September 18, 2023, Roach drove his car into the Seaport Sound Terminal, a storage and distribution facility for liquid fuels, and set the car on fire next to a concrete wall surrounding several fuel tanks containing more than five million gallons of fuel. Nearby employees noticed the car fire and saw Roach throw lit flares into the fuel tank enclosure. The employees called the police and fire department, contained the car fire, and extinguished two flares. Employees from the neighboring boatyard were also watching the fire from the nearby boats.

The police found Roach hiding under a boat in the neighboring boatyard. Roach told the officers that he had allowed a man to test drive a car that he was selling and that the man had taken him to the terminal and then knocked him out.

## II. PRETRIAL PROCEDURE

### A. CHARGES

The State charged Roach with first degree arson and second degree burglary. The State alleged that Roach committed the arson by causing a fire that was "manifestly dangerous to any human life, including firefighters," contrary to RCW 9A.48.020(1)(a). Clerk's Papers (CP) at 4. The State also alleged the arson "was aggravated by the following circumstances: pursuant to RCW 9.94A.535(3)(r), the offense involved a destructive and foreseeable impact on persons other than the victim." *Id.*

### B. FIRST COMPETENCY EVALUATION

On October 24, the trial court, at defense counsel's request, ordered that Roach undergo a competency evaluation.

The evaluator concluded that Roach did not present "with symptoms of a mental disease or defect that would preclude his capacity to understand the nature of the proceedings against him or to assist in his own defense." *Id.* at 12. The evaluator noted that although Roach "was obstinate in his perspectives and was argumentative when informed his beliefs were inaccurate, this appeared to be more indicative of personality traits (e.g., stubbornness) than mental health symptoms (i.e., delusions)." *Id.* at 20. The evaluator also stated that although Roach's beliefs, stubbornness, and "obstinate personality," might mean he would be a difficult client, he appeared to have "the capacity to understand information explained to him, consider alternative perspectives, and accept information he disagrees with should it come from the judicial authority." *Id.* at 20-21 (emphasis omitted).

Based on this evaluation, the trial court found Roach competent to stand trial.

C. Pretrial Motions to Waive Right to Counsel and Motions to Dismiss

Between December 6, 2023, and February 22, 2024, Roach filed several pro se motions with the trial court. In several of these motions Roach moved for the court to dismiss the charges under former CrR 8.3(b) based on law enforcement's failure to collect physical evidence linking him to the fire. And in three of these filings, Roach moved to dismiss his appointed counsel for failing to file a CrR 8.3(b) motion and to proceed pro se.

On February 28, the trial court heard Roach's motion to dismiss counsel and to proceed pro se. Roach's counsel advised the trial court that Roach initially wanted new counsel but that he was now requesting to proceed pro se. Defense counsel also advised the trial court that Roach believed that case law established that his case should be dismissed because law enforcement had not conducted any forensic testing and that Roach did not believe counsel when they explained that the cases Roach referred to did not support his arguments. Roach confirmed that he was seeking to represent himself because he did not "feel comfortable" with his current counsel. Verbatim Rep. of Proc. (VRP) (Feb. 28, 2024) at 7.

The trial court began engaging in a colloquy with Roach to ensure that Roach understood the rights he was waiving, the nature of the proceedings, what would be expected of him if he represented himself, and the potential consequences he was facing. But when the trial court asked Roach if he was familiar with the rules of evidence, Roach stated that although he was not familiar with the rules of evidence, he knew that there was Supreme Court case law requiring that there be forensic evidence.

After the colloquy, the trial court advised Roach that he would be better off if he was defended by an attorney. Defense counsel then requested a moment to talk with Roach off the record.

When Roach and his counsel returned, defense counsel expressed concern about Roach's competency because the reason Roach wanted to proceed pro se was premised on his belief that he could request that the trial court dismiss the case based on case law that defense counsel had already advised Roach was inapposite. Defense counsel expressed concern that this demonstrated that, contrary to the competency evaluator's opinion, Roach would not be able to respond to redirection or work with his attorney. Defense counsel requested that a second competency evaluation be conducted before the trial court decided Roach's motion to proceed pro se.

Sharing defense counsel's concerns, the trial court ordered a second competency evaluation and delayed ruling on Roach's motion to proceed pro se.

D. SECOND COMPETENCY EVALUATION

A second evaluator concluded that Roach did not exhibit symptoms of mental illness and that he had the capacity to understand the nature of the proceedings against him and to assist in his defense. Like the first evaluator, the second evaluator concluded that although Roach "was obstinate and hard-headed and seemed eager to argue his understanding of case law," he was capable of accepting the court's decisions even if he disagreed with the court and that there was no indication that Roach was incapable of understanding the nature of the proceedings or participating in his defense. *Id.* at 50.

5

E. SECOND HEARING ON COMPETENCY AND MOTION TO SELF-REPRESENT

On March 15, the trial court held a second competency hearing and considered Roach's

motion to waive his right to counsel. The trial court found Roach competent and turned to the issue

of whether Roach could represent himself.

After discussing Roach's right to counsel, his familiarity with the law, and the nature of

the charges he was facing, the trial court addressed the potential sentencing consequences:

> THE COURT: [State], would you recite again the standard range for Mr. Roach if convicted as charged.
>
> [STATE]: . . . So Burglary in the Second Degree with one point, which would assume a conviction on both counts, would be three months to eight months, Department of Corrections.
> Arson in the First Degree with one point, which would assume conviction on both counts, would be 26 to 34 months.
>
> THE COURT: Mr. Roach, did you hear the standard range of confinement . . . as recited by [the State]?
>
> [ROACH]: Yes, sir.
>
> THE COURT: *The crime of Arson in the First Degree is a Class A felony. The maximum term of confinement is life.* The maximum fine is $50,000. Burglary in the Second Degree is a Class B felony with a maximum fine of 20,000; is that correct --
>
> [THE STATE]: That is correct, Your Honor.
>
> THE COURT: -- on a Class B and maximum term of confinement of 10 years. Do you understand that, Mr. Roach?
>
> [ROACH]: Yes.
>
> THE COURT: Do you also understand that there is, at least in theory, the possibility that the sentences for these two offenses could be run consecutively so that, in theory, you could be sentenced to 34 months. You complete that sentence, and then you begin a sentence of eight months on the Burglary in the Second Degree?

[ROACH]: Yes.

THE COURT: Or more, *if there [are] substantial and compelling reasons to deviate from the standard range, you could be sentenced to a term of confinement significantly in excess of the standard range.* Do you understand that?

[ROACH]: Yeah, I understand that.

VRP (Mar. 15, 2024) at 7-9 (emphasis added).

Ultimately, the trial court found that Roach was knowingly and voluntarily waiving his right to counsel and granted Roach's request to represent himself.

F. MOTIONS TO DISMISS AND DISCUSSION OF SENTENCING CONSEQUENCES

On March 18, Roach filed a pro se motion to dismiss his charges under former CrR 8.3(b) based on ineffective assistance of counsel. His ineffective assistance of counsel claim was based on his former counsel's failure to move to dismiss because there had been no forensic lab report regarding what caused the vehicle fire or other potential forensic evidence.

On April 15, Roach filed a pro se motion to dismiss based on prosecutorial misconduct related to a failure to conduct a proper forensic investigation, perjury, and an attempt to conspire with his former counsel to convict him (Roach).

On April 18, the trial court held a hearing to address Roach's numerous motions to dismiss. Roach argued that his case should be dismissed because the law required law enforcement to conduct forensic tests of physical evidence such as "trace scraping, [and] fingernail evidence," whenever the police arrest someone for any type of violent offense and no forensic testing was performed following his arrest. 1 VRP (Apr. 18, 2024) at 7. Roach referred the court to the

following United State Supreme Court cases: *Cupp v. Murphy*,[2] *Maryland v. King*,[3] *Stuart v. Alabama*,[4] and *Bradshaw v. Richey*.[5]

The trial court explained to Roach that he had misinterpreted the case law. The trial court also advised Roach that although it was not grounds for dismissal under former CrR 8.3(b), he could present evidence of the lack of forensic evidence at trial and argue that the lack of evidence created reasonable doubt.

Roach also asserted that the State had committed prosecutorial misconduct and perjury because it had erroneously stated that he (Roach) had cited a case that he had not cited. The trial court responded that it was not prosecutorial misconduct for the State to cite different cases or evidence than the defendant to support its own arguments.

After the trial court addressed a variety of other matters, the State once again expressed concern about Roach's competency to stand trial or to represent himself and requested another competency evaluation. Roach denied needing another competency evaluation and asserted that the State was just angry because Roach had "caught" his former counsel "conspiring" with the prosecutor. *Id.* at 53.

Roach also asserted that the State was upset because he was defending himself and not permitting himself to be "railroaded to hell." *Id.* Roach then stated, "Because with the time that

---

[2] 412 U.S. 291, 93 S. Ct 2000, 36 L. Ed. 2d 900(1973).

[3] 569 U.S. 435, 133 S. Ct. 1958, 186 L. Ed. 2d 1 (2013).

[4] 586 U.S. 1026, 139 S. Ct. 36, 202 L. Ed. 2d 414 (2018).

[5] 546 U.S. 74, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005).

I'd be looking at -- I'm assuming I'd probably be looking at about 34 months off the arson itself. Am I wrong?" *Id.*

The State responded that there were many factors, including the aggravating factor, to consider when determining its possible sentencing recommendation and that it would not know its recommendation until after the trial. But the State stated that the sentencing range for the arson would essentially be 34 months to life if the jury found the aggravating factor.

The following conversation then took place between the trial court and Roach regarding the State's possible sentencing recommendation:

> MR. ROACH: 34 months then, right?
>
> THE COURT: Pardon me.
>
> MR. ROACH: You said 34 months?
>
> THE COURT: 34 months is the high end of the range. There's an aggravator -- aggravating circumstance that's alleged. If the aggravating circumstance is alleged, that would allow up to an exceptional sentence up to the maximum penalty which, for a class A felony, is life.
>
> MR. ROACH: Oh, I see.
>
> THE COURT: So that's --
>
> MR. ROACH: So I get life out of the deal then, right?
>
> THE COURT: I'm not -- I'm not saying anything about that.
>
> MR. ROACH: What?
>
> THE COURT: I'm not saying anything about that. There's a potential, if you were found guilty as charged with the aggravating factor, that it could go above the standard range, above the 34 months, up to as much as the maximum penalty for the crime which, because it's a class A felony, the maximum penalty is life[.]
> . . . .
> So you were saying in response to what [the State] was asking for, you had mentioned --

MR. ROACH: Correct.

THE COURT: -- up to 34 months.

MR. ROACH: He's asking for 34 months, is what you're saying?

THE COURT: I'm not saying -- no. That's not what I heard from him. He said the statutory -- or the top of the sentencing range is 34 months --

MR. ROACH: Right.

THE COURT: But he doesn't give a sentencing recommendation before trial to the Court.

MR. ROACH: Right.

THE COURT: I don't get involved in any of that stuff.

MR. ROACH: Right.

THE COURT: That's between the two of you. If you resolve the case, you resolve the case. If you don't, it comes to me for trial.

MR. ROACH: Right.

*Id.* at 55-56.

Regarding the State's request for another competency evaluation, the trial court stated that the fact Roach had not argued the law correctly did not mean he was not competent. The trial court denied the State's request for another evaluation, but it stated that it would reconsider the issue if it saw any indication that another evaluation might be appropriate.

Four days later, just before the jury selection commenced, Roach raised his argument regarding the collection of evidence once again. The trial court reiterated that the cases Roach was relying on did not support his argument.

The trial court then returned to the State's request for another competency evaluation and commented that it did not think a third evaluation was necessary. It noted that it had reviewed the two prior evaluations and that both evaluators had determined that Roach exhibited no evidence of mental illness but that he did have a "personality disorder, which they describe as stubbornness." 2 VRP (Apr. 22, 2024) at 99. The trial court stated that although its contacts with Roach had confirmed his stubbornness, the court had no reason to think Roach was unable to understand the nature of the proceedings. The trial court reiterated that it did not think that self-representation was a good idea, but it stated that it was Roach's right to represent himself given that the trial court had not observed anything calling Roach's competency into question.

Following this discussion, Roach stated that he wanted to renew his allegations that the State had engaged in perjury and prosecutorial misconduct—apparently by failing to address two cases Roach had cited, *Missouri v. McNeely*[6] and *Cupp*, and by addressing a case Roach had not cited. The trial court again responded that this argument was based on "a fundamental misunderstanding of what those cases stand for," and that the State was not required to respond to citations that were not applicable to the issue being addressed. *Id.* at 106. The trial court noted that it had now addressed this issue four or five times and that Roach was "demonstrating [his] stubbornness." *Id.* at 107.

G. TRIAL

At trial, the State's witnesses testified to the facts described above.

Tacoma Police Department Detective Jason Olson also testified that when he responded to the scene, he realized that they were dealing with fires that had the potential to cause "catastrophic

---

[6] 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).

problems." 3 VRP (Apr. 23, 2024) at 311. But at no point during their testimony did any of the witnesses to the fire testify about how witnessing the fire had affected them.

In addition to the witness testimony, the jury was shown CCTV footage showing the person who started the car fire walking away from the car and climbing a six-foot chain-link fence with barbed wire on it into the neighboring boatyard. The tape also showed this same person igniting and throwing the flares.

Roach testified in his defense. He admitted that he owned the burned car, but he asserted that the car had been taken from him by a man he had permitted to test drive the car and that the man had knocked him (Roach) out and left him at the boatyard where he was later found. Roach also testified that the officers never did any kind of forensic testing of his person and that he did not have any injuries or tears in his clothing consistent with climbing over a barbed wire fence.

After the parties rested, the trial court instructed the jury. In addition to instructing the jury on the charged offenses, it also provided the jury with a special verdict form that asked the jury whether "the offense involve[d] a destructive and foreseeable impact on persons other than the victim?" CP at 68.

In its closing argument, the State argued that it had proven the facts in the special verdict because Roach's acts had put everyone in the area at risk of a harmful, catastrophic event, even though the catastrophic event did not occur. In his closing argument, Roach pointed out to the jury that the fact he had no cuts or torn clothing when he was found in the boatyard was inconsistent with the theory that he had climbed over the barbed wire fence between the facility and the boatyard. He also pointed out that there was no evidence of him having lit any flares "or anything like that" found on his clothing. 4 VRP (Apr. 24, 2024) at 467.

H. VERDICT AND SENTENCING

The jury convicted Roach of first degree arson and second degree burglary. It also found by special verdict that the offense "involve[d] a destructive and foreseeable impact on persons other than the victim." CP at 68.

The trial court sentenced Roach to 8 months on the second degree burglary and 34 months on the first degree arson. Both sentences were at the top of the standard range for the offenses. The trial court also imposed an exceptional sentence of an additional term of confinement of 96 months on the first degree arson.

Roach appeals his conviction and exceptional sentence.

ANALYSIS

I. SELF-REPRESENTATION

Roach first argues that the trial court erred by accepting his waiver of his right to counsel and permitting him to proceed pro se because his waiver was not knowing, voluntary, and intelligent due to his failure to understand that the possible maximum penalty he faced was life. We disagree.

A. LEGAL PRINCIPLES

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution "provide a criminal defendant with a right to self-representation." *State v. Howard*, 1 Wn. App. 2d 420, 424, 405 P.3d 1039 (2017). This right is "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). But to ensure that a

defendant's right to counsel is protected, the trial court can only permit the defendant to represent themselves if their waiver of counsel is knowing, voluntary, and intelligent. *Id.* at 504.

The validity of a waiver of the right to counsel is determined "through a colloquy on the record between the trial court and the defendant." *Howard*, 1 Wn. App. 2d at 425. Among the factors the trial court must consider is whether the defendant understands the maximum potential sentence, "either through the trial court's colloquy or otherwise." *Id.* at 426.

In determining whether waiver of counsel is knowing, voluntary, and intelligent, "the trial court must indulge every reasonable presumption against waiver of the right to counsel." *Id.* at 425. "The trial court may deny a request for self-representation if the request is 'made without a general understanding of the consequences.' " *Id.* (quoting *Madsen*, 168 Wn.2d at 505).

We review a trial court's decision on a defendant's motion to waive their right to counsel for abuse of discretion. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667, 260 P.3d 874 (2011). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Id.* at 668. In other words, the decision must not rest on facts unsupported in the record or be based on an incorrect legal standard or an erroneous view of the law. *Id.* On appeal, it is the appellant's burden to show that the waiver of the right to counsel was not knowing, voluntary, and intelligent. *State v. Hahn*, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).

B. KNOWING, VOLUNTARY, AND INTELLIGENT WAIVER

Roach argues that the trial court erred in permitting him to waive his right to counsel because he did not understand the maximum potential sentence. He contends that this case is similar to *Howard*, 1 Wn. App. 2d 420. We disagree.

14

In *Howard*, the trial court advised a defendant seeking to waive his right to counsel that because it did not know the defendant's offender score it could not advise him of the potential sentencing range he was facing and that it could only advise him that he risked " 'a substantial period of imprisonment' " if convicted. *Id.* at 423-24 (quoting the record). At no point did the trial court advise the defendant of the statutory maximum for the offense. We held that the trial court's failure to provide more specific information about the potential maximum sentencing consequences beyond the fact he could face a substantial period of imprisonment prevented the defendant from knowingly, voluntarily, and intelligently waiving his right to counsel. *Id.* at 429-30.

Unlike in *Howard*, here the trial court did not merely advise Roach that he potentially faced a substantial sentence. Instead, the trial court expressly advised Roach of the potential standard range sentences, the maximum sentences for each offense, the risk of consecutive sentences, and the fact he "could be sentenced to a term of confinement significantly in excess of the standard range" if "substantial and compelling reasons to deviate from the standard range" were found by the jury. VRP (Mar. 15, 2024) at 9. Based on these facts, Roach does not show that the trial court failed to advise him of the potential sentencing consequences. Nor does he show that he did not understand what the trial court told him because he acknowledged that he understood throughout the trial court's colloquy.

Roach also argues that advisement of the statutory maximum penalties was not sufficient. He contends that the trial court's "references to the statutory maximum penalties were nullified by [the court's] subsequent assertions that Mr. Roach faced (" 'at least in theory' ") a possible term

of 42 months."[7] Br. of Appellant at 45 (emphasis omitted) (quoting VRP (Mar. 15, 2024) 8-9). Roach argues that because this later information was more specific, he "reasonably understood the statutory maximum to be an academic fact, not applicable to him" and that "[a]ny layperson would reach the same conclusion." *Id.* But Roach ignores the fact that the trial court also specifically advised Roach that if the jury found the aggravator, his sentence could exceed the standard range for the offenses up to the maximum penalty of life. And the mere fact the trial court advised Roach of the various potential sentencing consequences does not establish that he did not understand the maximum possible sentence.

Roach further contends that the trial court's colloquy did not accurately advise him of the potential penalties because the colloquy was "convoluted and misleading." *Id.* He asserts that the colloquy was constitutionally deficient, especially when the trial court was aware that Roach's competency had been questioned repeatedly. Although the trial court's colloquy was complex, it was also thorough and clearly advised Roach of the maximum possible penalty and that this penalty was within the realm of possibilities should the jury find the aggravating factor. The trial court also took care to have Roach confirm that he understood each statement the court made.

Although the trial court was aware that Roach's competency had been questioned, the trial court was also aware that that Roach had been evaluated twice and that he was found competent both times. The trial court was also aware that the evaluators concluded that Roach did not have any mental health disorders or illogical or disordered thinking and that neither evaluator expressed

---

[7] The 42-month number refers to the top of the standard range on the arson (34 months) added to the 8 months Roach could have received on the burglary offense.

concern about Roach's ability to understand information, so the trial court had no reason to question Roach's ability to understand the trial court's statements.

Roach also argues that his later statements demonstrate that he did not understand that he potentially faced a life sentence. But Roach ignores that this later conversation mainly concerned what the State's sentencing recommendation might be, not the nature of the maximum possible penalty to which he was exposed.[8] Even so, during this later conversation, the trial court reiterated to Roach that he could face a potential life sentence, which was the maximum for his alleged offense.

We hold that Roach fails to show that he did not understand the maximum potential sentence when he waived his right to counsel. Accordingly, the trial court did not abuse its discretion when it granted his motion to waive counsel and to represent himself.

## II. EXCEPTIONAL SENTENCE

Roach next argues that the exceptional sentence must be vacated because sufficient evidence does not support the aggravating factor. We hold that the aggravating factor was not supported by sufficient evidence.[9]

---

[8] To the extent Roach is also arguing that even if the initial colloquy with Roach was sufficient to allow him to proceed without representation, the trial court should not have permitted him to continue to proceed pro se once it became aware later in the proceedings that he believed he faced only a 34-month sentence, that argument also fails. Again, the portion of the record that Roach refers to was about the State's potential sentencing recommendation, not the maximum penalty for the offense.

[9] Because we reverse the exceptional sentence on this basis, we do not address Roach's additional argument that the aggravating factor did not justify the exceptional sentence. For the same reason, we do not address Roach's challenge to one of the trial court's findings of fact supporting the exceptional sentence.

No. 59571-1-II

A. LEGAL PRINCIPLES

We review the sufficiency of evidence supporting an aggravating factor in the same manner as we review the sufficiency of evidence supporting a conviction. *State v. Webb*, 162 Wn. App. 195, 205-06, 252 P.3d 424 (2011). The evidence is sufficient to support an aggravating factor if it permits any rational trier of fact to find the essential elements beyond a reasonable doubt when viewed in the light most favorable to the State. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). When evaluating sufficiency of the evidence, we assume the State's evidence is true and adopt reasonable inferences that a trier of fact could draw from that evidence. *Id.*

RCW 9.94A.535(3)(r)[10] requires the jury to find that "[t]he offense involved a destructive and foreseeable impact on persons other than the victim." An exceptional sentence based on a foreseeable and destructive impact requires an impact foreseeable to the defendant and of such a destructive nature that is not normally associated with the commission of the offense in question. *Webb*, 162 Wn. App. at 206. A key element of this aggravator is that there must be evidence that the crime in fact had a destructive impact upon a third party that was observable after the criminal incident. *Id.* at 206-07.

B. INSUFFICIENT EVIDENCE

This case is similar to *Webb*. In *Webb*, the defendant took his nine-year-old daughter with him when he robbed a store. *Id.* at 198-99. In addition to finding the defendant guilty of reckless endangerment and first degree robbery, a jury found that the robbery offense involved a destructive and foreseeable impact on persons other than the victim. *Id.* at 202.

---

[10] This statute was amended in 2025. LAWS OF 2025, ch. 90, §1. Because the amendment did not change this section of the statute, we cite to the current version of the statute.

On appeal, the defendant argued that the evidence was insufficient to establish that the robbery involved a destructive and foreseeable impact on his daughter. *Id.* at 198. Division Three of this court reversed the aggravating factor because, although the evidence provided descriptions of the girl and her behavior around the time of the robbery, there was no evidence that witnessing the robbery had any lasting traumatic impact on the child. *Id.* at 208. The court distinguished *Webb* from other decisions in which there was evidence of a destructive impact observable after the crime occurred. *Id.* at 206-07 (citing *State v. Cuevas-Diaz*, 61 Wn. App. 902, 812 P.2d 883 (1991); *State v. Jackson*, 150 Wn.2d 251, 76 P.3d 217 (2003)[11]).

More recently, our supreme court has applied RCW 9.94A.535(3)(r) in a similar fashion in *State v. Abdi-Issa*, 199 Wn.2d 163, 175, 504 P.3d 223 (2022). In *Abdi-Issa*, our supreme court held that the evidence supported this aggravator because there was evidence that the crime had lasting emotional and psychological effects on a third party. *Id.* The court relied on the fact that there was evidence that the third party was distressed by the crime and that she continued to suffer from flashbacks, difficulty sleeping, and panic attacks long after having witnessed the crime. *Id.*

Here, as in *Webb* and unlike in *Abdi-Issa*, the State presented no evidence regarding any lasting impact of the crime on any third party.[12] Although the nature of the arson certainly had the potential to cause substantial impact on third parties because the fire and flares were near vast

---

[11] These cases were decided before this aggravating factor was codified. *Webb*, 162 Wn. App. at 206.

[12] For purposes of this analysis, we presume that the third parties in question were the individuals who witnessed arson or who were in the proximity of the terminal when the arson occurred. Because we hold that there was insufficient evidence regarding the impact of the crime, we do not address Roach's argument that the State failed to establish who the victim of the arson was or who the third parties were.

amounts of highly flammable materials and were therefore extraordinarily dangerous, none of the witnesses actually testified about how the arson affected them personally.[13] Because of this, the evidence is not sufficient to support the aggravating factor and the exceptional sentence must be vacated.

### III. STATEMENT OF ADDITIONAL GROUNDS ON APPEAL (SAG)

In his SAG, Roach challenges the trial court's ruling on his CrR 8.3(b) motions and asserts that the evidence is insufficient to support his convictions because no forensic evidence was presented. These arguments fail.

A. DENIAL OF CrR 8.3(b) MOTIONS

1. LEGAL PRINCIPLES

In his SAG, Roach primarily argues that the trial court erred when it denied his CrR 8.3(b) motions to dismiss.

We review a trial court's decision to deny a motion to dismiss under CrR 8.3(b) for abuse of discretion, that is, whether the decision was manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *State v. Kone*, 165 Wn. App. 420, 433, 266 P.3d 916 (2011). A discretionary decision is manifestly unreasonable or based on untenable grounds "if it results from applying the wrong legal standard or is unsupported by the record." *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017).

Former CrR 8.3(b) states, in part:

---

[13] In its response, the State appears to argue, without citation to authority, that the jury needed to find only that the arson had the *potential* to cause a destructive and foreseeable impact on someone other than the victim. Because the State does not support this statement with any authority or reasoned argument or distinguish *Webb*, which holds that there must be evidence of an actual impact on the third party, we follow *Webb*'s analysis.

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

Dismissal under CrR 8.3(b) is an extraordinary remedy. *State v. W.H.*, 33 Wn. App. 2d 785, 792, 564 P.3d 992 (2025). The party seeking relief has the burden of establishing misconduct by a preponderance of the evidence and showing prejudice. *Salgado-Mendoza*, 189 Wn.2d at 431. To meet this burden, the movant cannot rely on speculative or general allegations of prejudice; they must show actual prejudice to their right to a fair trial. *Id.* at 431.

2. NO OBLIGATION TO GATHER OR TEST PHYSICAL EVIDENCE

In his SAG, Roach appears to argue that the trial court erred when it rejected his frequently raised argument that his case should have been dismissed because law enforcement failed to gather or test physical evidence from his person (such as swabs of his hands and scrapings from underneath his fingernails) and the scene of the incident as required under the Fourth Amendment. In the trial court, he referred to the following United State Supreme Court cases: *Stuart*, *King*, *Bradshaw*, and *Cupp*. The trial court repeatedly rejected this argument because none of these cases *required* evidence collection or testing. The trial court was correct.

*Stuart* was the denial of a writ of certiorari. 586 U.S. at 1026. There is no analysis in the majority's denial of the motion for writ of certiorari. *Id.* But in a short dissent, two justices describe the issue in the case as whether a defendant has the right to cross-examine the analyst who performed a blood alcohol test or whether the State can refuse to bring that analyst to the stand and present a different analyst to testify about the results of the test. *Id.* at 1026-27 (Gorsuch, J., dissenting). This case clearly does not stand for the proposition that law enforcement must collect or test evidence.

*King* addressed whether DNA evidence acquired from a DNA sample taken as part of the booking process from someone arrested for a serious offense without a warrant should be suppressed under the Fourth Amendment. 569 U.S. at 465-66. The Supreme Court held that when someone has been arrested for a serious offense based on probable cause, taking and analyzing a buccal swab of the arrestee's DNA is permitted under the Fourth Amendment because it is a legitimate booking procedure similar to fingerprinting and photographing the arrestee. *Id.* Thus, *King* addressed when warrantless testing by law enforcement was permitted, not, as Roach argued, when such testing was *required*.

The issue touching on forensics in *Bradshaw* was whether the court of appeals properly addressed an ineffective assistance of counsel claim by relying on evidence that was not properly presented and by disregarding the lower court's conclusion regarding whether a forensic expert was a properly qualified expert. 546 U.S. at 79. Nothing in *Bradshaw* discusses whether law enforcement is required to gather or test evidence.

And *Cupp* addressed whether the warrantless gathering of scrapings from under the defendant's fingernails was lawful. 412 U.S. at 292. This case addressed whether a warrantless search was lawful, not whether collection or testing of evidence was required.

Because none of the cases Roach cited supported his assertion that law enforcement was required to gather or test physical evidence, the trial court did not abuse its discretion when it denied the CrR 8.3(b) motions.[14] Accordingly, this argument fails.

### 3. PROSECUTORIAL MISCONDUCT, OBSTRUCTION, AND PERJURY

Roach also appears to argue that the trial court erred in denying his motion to dismiss his charges based on his allegations that the prosecutor engaged in prosecutorial misconduct and obstruction and perjured himself by not adequately responding to Roach's CrR 8.3(b) motions and citing cases that Roach did not brief. But, as discussed above, Roach's CrR 8.3 motions based on the State's failure to collect physical evidence had no merit. Even if the State's response to Roach's motions had been improper,[15] Roach does not show that the State's response would have had any effect on the trial court's decision. Thus, Roach cannot establish any prejudice, and the trial court did not abuse its discretion when it denied Roach's CrR 8.3(b) motions based on the prosecutor's alleged actions.

---

[14] Roach cites to several additional cases that we do not consider because they are not relevant to any of the issues he raises. *Williams v. Taylor*, 529 U.S. 362, 396, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2001) (addressing an ineffective assistance of counsel claim based on counsel's alleged failure to investigate or present mitigating evidence at a sentencing hearing); *Benn v. Lambert*, 283 F.3d 1040, 1062 (9th Cir. 2002) (addressing the withholding of existing evidence); *Van Tran v. Lindsey*, 212 F.3d 1143 (9th Cir. 2000) (no discernable relationship to any of the claims Roach raises in his SAG); *United States v. Ingram*, 797 F. Supp. 705 (E.D. Ark. 1992) (addressing whether the Fourth Amendment prohibits the issuance of an order compelling a defendant who was released on bail to appear to provide a hair sample).

[15] We note that the State's response or responses to Roach's several CrR 8.3 motions are not part of the appellate record.

B. ABSENCE OF FORENSIC EVIDENCE

Roach further appears to argue that the evidence was insufficient to convict him because the State did not present any forensic evidence showing what caused the car fire, any lab reports, or DNA evidence. But the mere absence of physical or scientific evidence is not enough to establish that the evidence was insufficient to support the convictions. Other direct evidence, such as testimony from eyewitnesses and circumstantial evidence, can alone support a conviction if this evidence is found to be credible by the jury. *See State v. Arquette*, 178 Wn. App. 273, 282, 314 P.3d 426 (2013) (circumstantial and direct evidence are equally reliable and the appellate court defers to the trier of fact regarding credibility of witness and the persuasiveness of the evidence). Accordingly, Roach's assertion that the evidence is insufficient merely because there was no forensic evidence fails.

IV. SUPPLEMENTAL SAG

In a supplemental SAG, Roach argues that his appellate counsel failed to raise several issues that he requested appellate counsel address. RAP 10.10(a) permits an appellant to raise issues related to the decision under review not issues related to the appeal. Accordingly, these arguments are outside of the scope of RAP 10.10, and we do not address the supplemental SAG.

CONCLUSION

We affirm Roach's convictions. But we remand this matter to the trial court to strike the aggravator and the exceptional portion of the sentence attributable to the aggravator.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 59571-1-II

CRUSER, C.J.

We concur:

PRICE, J.

CHE, J.